IN THE MATTER OF THE ASSIGNMENT FOR THE BENE-
FIT OF CREDITORS OF OLD COLONY COAL COMPANY,
A NEW JERSEY CORPORATION.

PAUL R. KLEINBERG AND A. ROBERT ROTHBARD,
ASSIGNEES-APPELLANTS, v. CHESAPEAKE & OHIO
RAILWAY COMPANY, A CORPORATION OF THE STATE
OF VIRGINIA, CREDITOR-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued February 24, 1958—Decided March 3, 1958.

Before Judges GOLDMANN, FREUND and CONFORD.

*Mr. Abraham H. Sles* argued the cause for the assignees-appellants.

*Mr. Charles W. Hutchinson* argued the cause for the creditor-respondent (*Messrs. Emory, Langan, Lamb & Blake, attorneys*).

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. The assignees under an assignment for the benefit of creditors of Old Colony Coal Company appeal from an order of the Hudson County Court vacating all prior proceedings taken in that court and forwarding the record and all papers to the Surrogate of Essex County, for the reason that jurisdiction of the matter lay exclusively in Essex County. The order was the result of a motion by the Chesapeake & Ohio Railway Company, a judgment creditor, to vacate a prior order entered by the County Court authorizing the assignees to sell all of Old Colony's assets to Garner, its president, for $7,500.

Old Colony is a New Jersey corporation having its statutory registered or principal office in the City of Newark, Essex County. It is engaged in the coal business, its principal place of business being represented as located in Kearny, Hudson County. On August 20, 1956 Old Colony executed a deed of assignment for the benefit of creditors which was filed with the Surrogate of Hudson County on September 13, 1956 in accordance with *N. J. S.* 2A:19–7. All subsequent papers were likewise filed in that office. The list of creditors annexed to the assignment pursuant to *N. J. S.* 2A:19–5 did not include the name of Chesapeake which had in the interval between the execution and filing of the assignment recovered a judgment in the Superior Court, Law Division, Essex County, against Old Colony for $1,288.80, with costs. On October 1, 1956 the assignees filed their affidavit of mailing of the notice of assignment to creditors. Chesapeake did not receive a copy of the notice because the assignees allegedly had no knowledge of its claim.

The assignees meanwhile proceeded to examine president Garner and his son, *N. J. S.* 2A:19–15, but the depositions were not filed with the Hudson County Surrogate until February 1957. The assignees also engaged a certified public accountant to make an audit of Old Colony's books and records for the fiscal year ending June 30, 1956, but for some unexplained reason his audit report was not filed until

June 1957. And the assignees' surety bond in the sum of $7,500, obtained October 31, 1956 in accordance with *N. J. S.* 2*A*:19–10, was not filed with the surrogate until February 1957.

On November 13, 1956 the assignees filed a petition to accept an offer of $7,500 made by Garner for all the assets of Old Colony. An order to show cause was entered that day reciting that the assignees would apply to the County Court on November 30, 1956 for permission to accept the offer and for instructions. Notice was mailed to all creditors except Chesapeake, the reason assigned being that the assignees did not then know of its claim.

The petition to accept Garner's offer recited that Old Colony had a claim against S. Smith Coal and Oil Company, its principal debtor, of about $26,000, and "some possible claims" against Garner Coal Mining Company. However, the depositions taken by the assignees revealed that Garner owns both companies, and that the Smith company owed Old Colony $33,459 and was indebted in the amount of about $67,500 by way of a mortgage originally held by Old Colony but later assigned by it to Garner Coal Mining Company for about $16,000. The depositions also show that Old Colony was not engaged in the retail coal business but was a wholesaler of coal.

After a hearing on November 30, 1956 the Hudson County Court entered an order authorizing the assignees to consummate a settlement with Garner on his $7,500 offer for the assets of Old Colony. As of this date, neither the true inventory and valuation required by *N. J. S.* 2*A*:19–9, nor the assignees' bond required by *N. J. S.* 2*A*:19–10, had been filed with the court. Chesapeake, learning of the assignment, filed its proof of claim with the assignees on December 6, 1956. Later, when it found out about the approval of the sale to Garner, it moved for an order setting aside and vacating the order of November 30, 1956 on the following grounds, among others: (1) failure of the assignees to give it notice of the general assignment within 30 days, in violation of *N. J. S.* 2*A*:19–8, and their further failure to give

it notice of any of the subsequent proceedings, although its judgment claim was a matter of record; (2) the Hudson County Court was without jurisdiction because Old Colony's principal office was, by virtue of *N. J. S.* 2A :19–45, located in Newark, Essex County, so that only the Essex County Court or the Superior Court had jurisdiction; (3) the order approving the sale of the assets was improper under *N. J. S.* 2A :19–11 because the assignees had not prior thereto filed their inventory, valuation and bond.

Thereafter the Hudson County Court, on July 30, 1957, entered its order vacating all proceedings theretofore taken before it and adjudging them void, and forwarding the record and all papers to the Essex County Surrogate. The assignees filed their notice of appeal on August 30, 1957.

We will dispose, first, of respondent Chesapeake's motion, made prior to the date of oral argument and held until final determination of the appeal, to dismiss the appeal because the order vacating the Hudson County Court proceedings was interlocutory in nature and the permission of this court to appeal from said order had never been sought or granted, in accordance with the rules. *R. R.* 2:2–3 requires that application for leave to appeal from an interlocutory order or judgment shall be served and filed within ten days thereof. *R. R.* 1:27B permits us to extend that period for not exceeding 30 days, "upon a clear showing of a good cause and the absence of prejudice." The application for extension "may be made at any time, provided that the action required to be taken within the specified time was in fact taken within that time as extended by the court."

Both briefs refer to *Romano v. Maglio,* 41 *N. J. Super.* 561 (*App. Div.* 1956), certification denied 22 *N. J.* 574 (1956), *certiorari* denied 353 *U. S.* 923, 77 *S. Ct.* 682, 1 *L. Ed.* 2d 720 (1957), and *In re Mortgage Guaranty Corporations' Rehabilitation Act,* 131 *N. J. Eq.* 120 (*E. & A.* 1942). In the former, an order approving a sale, *entered after final judgment,* was held to be final in character. In the latter, an order approving a trustee's sale made in the course of the administration of an estate, was held inter-

locutory. *Romano* contains an interesting discussion of the nature of an order approving the sale of lands. The *Mortgage Guaranty* case is somewhat closer to our situation, although here we are concerned with the vacation of an order of sale because of lack of jurisdiction.

 Proceedings involving an assignment for the benefit of creditors are administrative in nature, entrusted to the supervision of the County Court or the Superior Court, *N. J. S.* 2A:19–45. In such proceedings there invariably are a number of matters which must be decided before the formal winding up by the assignees' final accounting, *N. J. S.* 2A:19–41. But these are merely steps in a continuing matter. The general key to determining whether a particular order is interlocutory or final turns on the question of whether it disposes of all of the issues in controversy and as to all parties. *Petersen v. Falzarano*, 6 *N. J.* 447, 452–3 (1951); *In re Url's Estate*, 5 *N. J.* 507, 512 (1950). The County Court determination that it did not have jurisdiction, and its vacating of the proceedings leading up to the order approving the offer for sale, did not terminate the administration of the assets. The assignees were in the same position as if the court had originally refused to approve the sale.

*R. R.* 4:62–2(d) and (f), made applicable to the County Court by *R. R.* 5:2–1, was authority for the County Court vacating its own order. Such action is deemed interlocutory. *Sobol v. Chelsea Hotel Corp.*, 1 *N. J.* 13 (1948). And see *Palm Beach Mercantile Co. v. Ivers*, 2 *N. J. Super.* 5 (*App. Div.* 1949). The vacating order was akin to an order granting a new trial. The latter has always been considered interlocutory; the litigation goes on. The order vacating the approval did not wind up the proceedings; implicit in such an order is the fact that it will be superseded by other proceedings in the proper forum.

It has been suggested that there is a practical difficulty in considering the order under appeal interlocutory because the offer might be withdrawn. There are two answers to this: (1) application could immediately have been made

for leave to appeal, within the initial 10-day period or within the 30-day period following; and (2) there is no guarantee that, even were the vacating order considered final, the offer would not be withdrawn during the pendency of the appeal.

Since we consider the order under appeal interlocutory, we must dismiss the appeal. We cannot extend the time to apply for leave to appeal under *R. R.* 1:27B, since a motion for leave to appeal was not made within 30 days after the expiration of 10 days from the date of the order complained of, and indeed, has never been made. However, since we have decided that the appeal is without merit in any event and the issues are of general interest and ought to be clarified for the guidance of the bar, we express our opinion in relation to them.

Appellants claim that the County Court order was completely violative of *R. R.* 1:27D(a) which, in pertinent part, provides:

"* * * where any court of this State is without jurisdiction of the subject matter of an action, issue or cause, it shall, on motion or on its own initiative, order the action or cause, with the record and all papers on file, transferred to the proper court *for determination; and the action or cause shall then be proceeded upon as if it had been originally commenced in the proper court.*" (Italics appellants')

They contend that if the Hudson County Court correctly concluded that jurisdiction of the proceedings was in the Essex County Court, it should merely have ordered a transfer of the proceedings to the latter court which would then have been able to examine into the entire matter and take such steps in the cause as would be appropriate. This, they say, would have obviated the blanket cancellation of all proceedings theretofore taken in the Hudson County Court and would have been more consonant with the purpose of *R. R.* 1:27D, which is to eliminate the whole problem of dismissal of actions because brought in the wrong court.

*R. R.* 1:27D has for its historical background the Transfer of Causes Act of 1912, *L.* 1912, *c.* 233, incorporated in

*R. S.* 2:26–60 and 61. After the institution of our rules of court, the transfer of causes procedure continued in effect by reason of original *Rule* 1:7–8*A.,* later *R. R.* 4:3–4 and finally *R. R.* 1:27*D,* effective September 8, 1954.

*R. R.* 1:27*D*(*a*) does not warrant the conclusion advanced by the assignees that the Hudson County Court should simply have transferred the cause and not invalidated the prior proceedings. The italicized language cannot be interpreted as precluding the court from vacating action taken by it prior to its discovery of lack of jurisdiction. Such prior action is absolutely void, the court lacking the power to proceed in the matter. The language was intended to prevent the bar of the statute of limitations and the necessity of re-service of process. Jurisdiction over the person previously obtained would not be vitiated by the lack of jurisdiction in the court over the subject matter. All pleadings and other papers already filed would not have to be re-filed or re-instituted *ab initio.* However, the rule could not be interpreted as imparting validity to any orders or judgments rendered by a court which concededly lacked the power to enter them. *Cf.* 2 *Schnitzer and Wildstein, N. J. Rules Service, A IV*–38, discussing *R. R.* 4:3–4(*a*).

Moreover, transfer of causes under the rule contemplates the making of a "determination" by only the transferee court. The action set aside in the present case was of sufficient substance to be considered a part of the determination in the proceedings. It was therefore properly set aside so that the determination in that respect could be made by the proper court.

Appellants next argue that the Hudson County Court had complete jurisdiction over the subject matter of the assignment, including jurisdiction to authorize and approve the sale of the assets to Garner, so that the entry of its vacating order was error.

The basis of the County Court's action was *N. J. S.* 2*A* :19–45, which provides:

"A corporation making a general assignment shall be deemed, for the purposes of this chapter, a resident of the county in which its

principal office is located, and the county court of such county or the superior court shall have jurisdiction in the premises."

This is the only section of *N. J. S.* 2A:19–1 *et seq.* (assignments for the benefit of creditors) that mentions jurisdiction. Appellants rely upon *N. J. S.* 2A:19–7, which provides:

"The assignee, upon receiving a general assignment, shall forthwith record it, including the inventory and list of creditors with their claims, in the county where the assignor resides and in any other counties or states where he may deem it necessary. * * *"

and the assignment is to be recorded in the office of the register of deeds or county clerk in such county and filed with the surrogate of that county or with the clerk of the Superior Court.

■ The County Court held that "principal office" in *N. J. S.* 2A:19–45 meant the same as the "principal office" designated under the General Corporation Act, *R. S.* 14:4–2, *i. e.*, the registered or statutory office. This was correct. "Principal office," with reference to corporations, is a designation of art synonymous with "registered office." *R. S.* 14:4–1. It is clearly in the public interest to grant jurisdiction to a precise and a determinable county so that creditors and other interested persons can search the records in the county where the corporation maintains its statutory office and know whether the corporation has conveyed its assets to an assignee. This is a definite and sensible way to determine jurisdiction. To adopt appellants' suggestion that the County Court "in the county where the assignor resides" (*N. J. S.* 2A:19–7)—that is, the county where it has its principal place of business—has jurisdiction would create doubt and uncertainty and would be inconsistent with a grant of jurisdiction to one county. It might well be a matter of opinion or disputed fact whether or not a certain county was the site of the company's principal place of business. For example, we can well imagine a situation where a coal company like Old Colony might have three large coal depots and offices, serving different areas of the State.

Under appellants' contention, an assignee for the benefit of creditors would be uncertain as to which one of these three counties might be considered the appropriate one for recording and filing the assignment.

To hold that the assignment must be recorded and filed in the county where the corporation has its principal (registered) office is to make for certainty. If the assignee deems it necessary to also record the assignment in any other county, he may do so under *N. J. S.* 2*A*:19–7, but only the County Court in the county of the principal office can have jurisdiction.

In our view, *N. J. S.* 2*A*:19–45 was intended to exclude jurisdiction in any County Court other than the one in the county in which the statutory principal office of the corporation is located. We agree with the County Court that the term "principal office" in *N. J. S.* 2*A*:19–45 and the objective of notice under the assignment for the benefit of creditors statute are distinguishable from the term "chief office" and the objective of taxation construed in the case of *Herdman Motor Co. v. State Board of Tax Appeals,* 119 *N. J. L.* 164 (*Sup. Ct.* 1937).

We next consider the point raised by respondent Chesapeake that the order of the Hudson County Court approving the sale of the assets was improper under *N. J. S.* 2*A*:19–11 which provides that

"Until the inventory, valuation and bond required by this chapter are filed, the assignee shall not proceed to the discharge of his trust under the general assignment, further than may be necessary for the preservation of the assigned estate; but the court, before such inventory, valuation and bond are filed, may authorize the assignee to perform such other acts in the administration of the trust, and upon such terms, as it may deem necessary for the protection of the trust."

The assignees argue in support of the County Court's order of November 30, 1956 approving the offer for the sale of the assets prior to the filing of the inventory, valuation and bond, that the last clause of the quoted statute "clearly grants the court authority to authorize the assignee to act

in the administration of the trust," and that the court was "apparently" satisfied that the order approving the sale of the assets could not be attacked because of these defects. The argument is specious and not supported by the County Court's letter opinion holding that jurisdiction was exclusively in the Essex County Court. Nowhere, either in the record approving the sale or the letter opinion, is there any mention of the failure to file the inventory, valuation and bond. It would appear that as of November 30, 1956, when the order approving the offer for sale was entered, the Hudson County Court simply was not aware of these defects. It was, of course, aware of them at the time it entered its order vacating the proceedings—this by virtue of Chesapeake's notice of motion—but the letter opinion concluding that the proceedings theretofore taken must be vacated and the matter transferred to the Essex County Court for determination, is concerned solely with the jurisdictional question which the court considered dispositive of the matter.

The proviso relied upon by the assignees cannot, therefore, cure the defects, because there was no determination by the Hudson County Court that confirmation of the sale on November 30, 1956 was "necessary for the protection of the trust." The express requirement in the main clause of *N. J. S.* 2*A*:19–11 is clearly to the effect that the assignee is to do nothing in discharge of his trust under the general assignment, save as may be necessary to preserve the assets until the inventory, valuation and bond are filed. That such inventory, valuation and bond actually existed at the time of the confirming order is of no consequence; the statute is concerned with their filing, not the completion of the inventory and valuation and the actual securing of the bond. Accordingly, the inventory, valuation and bond not having been filed until sometime subsequent to the November 30, 1956 order, and there being no finding by the County Court that the approval of the sale was necessary for the protection of the trust, entry of the order was improper and subject to vacation upon application because of this procedural infirmity—in addition to the jurisdictional ground discussed

above. *Thomas Wood & Sons, Inc. v. Memelaar,* 11 *N. J. Misc.* 823, 168 *A.* 606 (*Sup. Ct.* 1933), is not to the contrary. That case held merely that the failure of an assignee for the benefit of creditors to file an inventory, valuation, bond, *etc.,* did not affect the deed of assignment itself.

Appellants argue, finally, that Chesapeake was estopped to attack the proceedings in the Hudson County Court by reason of its letter to the assignees under date of December 6, 1956 enclosing its affidavit of judgment claim and requesting that it "receive appropriate payment or distribution." They rely upon the black letter text of 6 *C. J. S. Assignment for Benefit of Creditors* § 375, *p.* 1419 (1937): "Assent to, or acceptance of the provisions of, an assignment, or the acceptance or claiming of benefits under it, estops a creditor from attacking an assignment." Chesapeake does not attack the assignment, but rather the sale of the assets pursuant thereto. There is nothing in its claim letter indicating that it assented to the sale of the assets to Garner, arranged prior to its entry into the case. There is no element of estoppel here.

Garner, purchaser of Old Colony's assets, has filed a brief by which he "intervenes in this appeal" and seeks to rely on the argument made by appellants. *R. R.* 2:2–5 and 1:2–8 provide specifically for the manner in which a party may appeal. Garner has ignored these rules and seeks to enter the appeal without even the suggestion of a motion for leave to intervene. This he may not do. His brief will be suppressed.

The appeal is dismissed, and the matter will proceed in the Essex County Court.