(No. 37720.—

WARREN EGGERT, Appellant, *vs.* THE BOARD OF APPEALS OF THE CITY OF CHICAGO *et al.*, Appellees.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

Raymond L. Jones, of Chicago, for appellant.

John C. Melaniphy, Corporation Counsel, of Chicago, (Sydney R. Drebin and Rita Ivy Epstein, Assistants Corporation Counsel, of counsel,) for appellees.

· Mr. Justice Solfisburg delivered the opinion of the court:

Warren Eggert, the owner of a three-story building in Chicago containing seven apartments, applied for a permit to do certain repair work and improvements on the premises. The application was denied. The owner was further notified to reduce the number of apartments to two—one on the first floor and one on the second—and to discon-

tinue the use of the third floor for living quarters. On administrative appeal the Board of Appeals denied relief, except that the owner was granted the right to continue use of the third floor as an apartment. He thereupon filed a complaint in the circuit court of Cook County to review the decision of the Board. The court affirmed the decision, and the plaintiff has taken a further appeal directly to this court on the theory that a constitutional question is involved.

The plaintiff is the present owner of a three-story frame building which was converted in 1946 and 1947 by his predecessor in title from a three-apartment dwelling to a seven-apartment dwelling. The conversion was made without acquisition of a required building permit and at a time when the Chicago Municipal Code permitted no more than four apartments in a wood-frame dwelling. In 1957, one year after the plaintiff purchased this property, the city enacted a zoning ordinance which imposes a minimum-lot-area requirement of 2500 square feet per dwelling unit. Since the lot area in question is only 7600 square feet, it is conceded that the provisions of the zoning ordinance are not satisfied. It is argued, however, that the plaintiff has a constitutionally protected right to continue his nonconforming use of the property. The instant controversy arises out of an application for a construction permit and brings for review a decision of the Board of Appeals ordering deconversion of the premises from seven apartments to three apartments.

We consider at the outset certain jurisdictional objections made by the defendants. It is contended that the plaintiff's appeal from the denial of two successive applications for a permit to make repairs was not timely. The Board's rules require that appeals from administrative decisions be brought within 90 days. Appeal in this case was filed on February 16, 1961, three days after the zoning administrator had rejected the second permit application. An earlier application had been denied on September 13, 1960, and was

followed by an order, dated November 18, 1960, to deconvert the building. The defendants argue that, because of the similarity between the two permit applications, the first denial must be deemed the one from which appeal is taken and that the second application was an attempt to confer jurisdiction on the Board to hear an appeal for which the filing time had elapsed. In addition, the defendants contend that this court lacks jurisdiction on direct appeal because the trial judge made no express ruling on any constitutional question.

Both of these contentions must be rejected. It is, of course, clear that a valid time limit for appeal may not be defeated by the expedient of resubmitting the dispute for a new determination of issues already decided; and, in the instant case, the first permit application appears to differ from the second only in that the latter was filed by the plaintiff personally rather than by a contractor acting as his agent, and in that it modified the previous proposal for repairs in a manner so inconsequential as to have evidently no effect on their estimated cost. However, the plaintiff's complaint to the Board, and later to the circuit court, though labeled an appeal from the second denial of a permit, stated as the sole ground for reversal the alleged unconstitutionality of the order to deconvert. Accordingly, both the Board and the court treated this controversy as an appeal from the latter decision. We concur with that view of the case. Since the appeal filed on February 16, 1961, was made within 90 days of the November 18th deconversion order, the objection to the Board's jurisdiction is without merit.

It is also plain that the failure of the trial judge expressly to rule on the constitutional issues raised by the plaintiff does not preclude direct appeal to this court. The plaintiff insisted in the circuit court, as he had before the Board, that compulsory deconversion of the premises would result in an unconstitutional taking of property. The judgment below, in sustaining the order to deconvert, necessarily rejected that argument. If it were essential to our jurisdic-

tion that a ruling on constitutional issues be explicit, the right of direct appeal would vary with differences of expression. Manifestly, what is required to bring a constitutional question to this court is merely that the issue be properly raised and an adverse judgment entered.

We turn, therefore, to the merits of the controversy. The Chicago zoning ordinance (art. 6, sec. 6.2) provides that "Any non-conforming use, building or structure which existed lawfully at the time of the adoption of the comprehensive amendment or any subsequent amendment thereto, may be continued." The issue in this case is whether the use of the plaintiff's property as a seven-apartment dwelling was a lawful one within the meaning of this provision and, if not, whether the application of the ordinance to that property is constitutional. The defendants argue that the use in question was not lawful because the conversion of the building from three apartments to seven apartments was made without a permit and because such a conversion violated provisions of the existing municipal code which, in relevant part, read: "No multiple dwelling of wood frame construction shall contain more than four dwellings [section 48—38] * * * No building or structure shall be enlarged or increased in capacity or converted for any of the purposes of such units as described in chapter 51 of this code, unless the entire building or structure shall be made to conform to the requirements in the building provisions of this code for new buildings and structures. [Section 60—2.]" The plaintiff in turn relies heavily on authorities which suggest that the failure to comply with formal permit requirements is "cured when the work is proved" and is not incompatible with a legal nonconforming use.

Plaintiff's authorities, however, are not persuasive in the situation before us. Courts are closely divided on the question whether a failure to obtain a required permit which could have been lawfully issued is alone sufficient to preclude a status of valid nonconforming use. Compare *Scavone* v.

*Totowa,* 49 N.J. Super. 123, with *Mang* v. *County of Santa Barbara,* (1960) 182 Cal. App. 2d 93, 5 Cal. Rep. 724, and *Smalls* v. *Board of Appeals,* (1961) 211 N.Y.S. 2d 212, aff'd 218 N.Y.S. 2d 1005. But where, as here, a permit for alteration is not only unobtained, but legally unobtainable because the alterations are themselves unlawful, no right of nonconforming use can be acquired by doing the prohibited acts.

*Heimerle* v. *Village of Bronxville,* 5 N.Y.S.2d 1002, aff'd mem. 256 App. Div. 993, is a case in point. The plaintiffs there, acting without a required certificate of occupancy, converted part of a frame residential building into a mortuary in a district where only fireproof and masonry buildings could then be erected. A provision in the building code forbade changes in the use of existing buildings except where the entire structure conformed to the requirements for new buildings. A dispute arose when a zoning ordinance was amended to exclude mortuaries from the district in question but made exceptions for "lawfully existing" uses. Against the plaintiffs' assertion of a right of nonconforming use, the court held that violation of the building code and failure to obtain a certificate of occupancy made the use of the mortuary unlawful and subject to the new zoning provision. In so holding, the court followed the commonly accepted rule that uses in violation of a statute are not protected under zoning clauses which exempt existing uses. See *County of Cook* v. *Triem Steel & Processing, Inc.,* 19 Ill. App. 2d 126; *Arsenault* v. *City of Keene,* (1962) 104 N.H. 356, 187 A. 2d 60; *Troutman* v. *Aiken,* 213 Ga. 55, 965 E. 2d 585; and 1 Yokley, Zoning Law and Practice, sec. 148.

The plaintiff in the instant case seems to concede that an illegal use cannot give rise to a valid nonconforming use, but it is urged that the act of converting property should be distinguished from the "use" to which the property is put. And since the relevant provisions of the Chicago Municipal

Code speak in terms of construction requirements rather than use restrictions, the plaintiff is able to argue that the use here was lawful even if the conversion was not. On that basis he would distinguish the authorities set out in the preceeding paragraph.

Nevertheless, it is clear that, although the building code deals in form with acts of construction, the city's basic concern is for the ultimate use which those acts contemplate. This concern is manifested in the frame-building provision (section 48—38) which not only was made applicable exclusively to "dwelling" places but classifies them by number of apartments. Such a classification would obviously serve no rational purpose if it related only to the act of conversion and not to subsequent use. Thus, the plaintiff's interpretation would give effect to the literal meaning of the provision but would frustrate its plain objective of protecting the public against fire hazards. All of this was well understood by the New Jersey Supreme Court when these issues were raised in *Murray* v. *Borough of Avon-By-The Sea,* (1948) 137 N.J.L. 106 58 A. 2d 228. The plaintiffs in that case sought a license to operate a three-story frame building as a hotel. They argued that an ordinance requiring that all buildings "hereafter converted" into hotels be fireproof was applicable "only where there has been a structural change in the building itself and not merely a change in its use." The court, however, emphasized the fire risks inherent in the use of wooden buildings for the accommodation of large numbers of persons and held that the term "converted" embraced use as well as construction.

We think that, however the plaintiff's use of his property might be characterized for other purposes, it is not one which "existed lawfully" within the meaning of section 6.2 of the zoning ordinance or the corresponding clause in the enabling statute. To rule otherwise would favor those who have disregarded both the formal and substantive provisions of the building code. We see no reason to attribute

to the legislative body an intent in enacting section 6.2 to reward those whose violations of other ordinances have escaped detection. Instead, as pointed out in *Cohen* v. *Rosevale Realty Co.* 121 Misc. Rep. 618, 202 N.Y.S. 95, 96, where a use commenced in breach of a restrictive convenant was held subject to a subsequent zoning ordinance: Buildings erected in violation of a restrictive covenant are illegally in existence. The defendant having built in violation of law cannot benefit by such illegal conduct."

The remaining issue is whether the Board's deconversion order will operate as an unconstitutional deprivation of property because it will allegedly cause a 50% reduction in the market value and monthly income of the premises. It is somewhat difficult to understand the plaintiff's constitutional theory since he does not appear to dispute the validity of the zoning ordinance. He does, however, challenge the constitutionality of the frame-building provision, and he seems to question the reasonableness of the zoning ordinance as applied to his particular property.

Little need be said concerning the latter contention. The rules which determine the general validity of zoning ordinances and their validity as applied to a particular property are so familiar and have been stated so often that no purpose would be served by repeating them here. (*People ex rel. Chicago Title and Trust Co.* v. *Village of Elmwood Park*, 27 Ill.2d 177.) It suffices to point out that the argument offered to support the plaintiff's position consists solely of the evidence of financial losses mentioned above. But economic hardship, although relevant, is not decisive in zoning cases. In *Miller Brothers Lumber Co.* v. *City of Chicago*, 414 Ill. 162, for example, a zoning ordinance was upheld notwithstanding allegations that it would cause an 80% reduction in the value of certain property. The ordinance before us is related to legitimate interests of the city, and the plaintiff has failed to overcome the presumption of constitutionality which attaches to its enactment.

The attack on the frame-building provision, likewise, must be rejected. Our decisions have made it clear that a city may impose reasonable building restrictions for the protection of the public health and safety and that the classification adopted in such regulations must be sustained unless it is arbitrary and not reasonably related to the legislative purpose. (*Father Basil's Lodge* v. *City of Chicago*, 393 Ill. 246; *City of Chicago* v. *Miller*, 27 Ill.2d 211.) This court has specifically upheld restrictions against the removal or repair of frame buildings. (*Patterson* v. *Johnson*, 214 Ill. 481.) Section 48—38 of the municipal code was intended, as noted previously, to safeguard the community against fire hazards. We are satisfied that the requirements for exercise of the police power have been met. The plaintiff's reliance on *Schneider* v. *Board of Appeals*, 402 Ill. 536, 545, to prove the contrary is misplaced. That case held only that a proposed subdivision of a nonconforming structure would not result in any "violation of the provisions of the ordinance concerning the enlargement or extension of the nonconforming use." So far as the opinion may have suggested by dictum that classification according to number of apartments rather than number of inhabitants is arbitrary, it has been displaced by *City of Chicago* v. *Miller*, 27 Ill.2d 211, which expressly approved the type of classification here employed.

It should, moreover, be noted that building regulations may be constitutionally applied even retroactively where the public benefits resulting therefrom are not unreasonably disproportionate to the losses suffered by individual property owners. (*Kaukas* v. *City of Chicago*, 27 Ill.2d 197; *City of Chicago* v. *Miller*, 27 Ill.2d 211; *Abbate Bros., Inc.* v. *City of Chicago*, 11 Ill.2d 337.) In light of those cases the plaintiff's protestation of unfairness, based on the fact that he is an innocent purchaser, loses its appeal. For if the building code could be applied to compel deconversion of a building which had been altered before the code was enacted, it is

difficult to see why a change in ownership should prevent compulsory deconversion of a structure which was altered after such an enactment. Furthermore there is nothing in our case law to suggest that a purchaser, because of his innocence, acquires greater immunity than the seller had to an exercise of the zoning power. Indeed, *Schneider* v. *Board of Appeals,* 402 Ill. 536, 547, which declared that "purchasers are entitled to the same rights  *  *  *  as would be their grantors," implies quite the opposite.

Nor, finally, can it be decisive of the result in this case that the frame building provision was not retained under the revised building ordinance of 1949. One might, of course, reason that if the failure to secure an obtainable permit "is cured when the work is proved," then a failure to secure a permit which by statute is made "unobtainable" should be cured by repeal of the statute. However, the cases asserting that lack of a permit is cured upon completion of the work have usually involved private litigants (see cases cited in 9 McQuillin, Municipal Corporations, 524), and the same rule would not necessarily apply to cases involving· the police power. More importantly, it cannot be assumed that the deletion of the frame-building provision reflects dissatisfaction with it. The legislative body may well have substituted for it other provisions intended to accomplish the same purpose. In that event the plaintiff's property would escape both the new provision and the old if a valid nonconforming use could arise from the violation of a subsequently repealed ordinance.

For the reasons stated above we affirm the judgment of the circuit court of Cook County.

*Judgment affirmed.*