G & S Mortgage & Investment Corporation, an Illinois Corporation, Plaintiff-Appellant, v. City of Evanston, a Municipal Corporation, Defendant-Appellee.

Gen. No. 54,974.

First District, Second Division.

October 13, 1970.

Samuel Morgan, of Chicago, for appellant.

Jack M. Siegel, Corporation Counsel of City of Evanston, for appellee.

MR. PRESIDING JUSTICE McCORMICK delivered the opinion of the court.

In 1925, the City of Evanston (defendant) issued a permit authorizing the construction of a 10-unit apartment building at 1003–1009 Greenleaf Street. The building now contains 12 units. In 1968, the defendant conducted an intensive check for zoning violation of various sections of the City, as a result of which a quasi-criminal complaint was filed on September 11, 1968, against G & S Mortgage & Investment Corp. (plaintiff). This complaint charged a violation of the Evanston Zoning Ordinance in that three units more than allowed were maintained in the building. (Since that action, one of the three excess units has been vacated.)

On November 22, 1968, plaintiff was found guilty of the violation of a zoning ordinance and fined $100, plus costs. Four days later, the plaintiff filed a complaint asking for a temporary restraining order to prevent the defendant from instituting any further quasi-

criminal proceedings based upon the alleged violation. After a hearing the chancellor denied the restraining order. The plaintiff appeals, asking that the order refusing issuance of the temporary injunction be reversed.

The defendant argues that plaintiff is barred from proceeding with its complaint seeking a temporary injunction on the ground that on November 22, 1968, plaintiff was found guilty of a zoning violation; that at that time it paid the fine but took no appeal from that judgment. In its brief defendant states: "The law is of course well settled that a former adjudication is a bar to a subsequent action on the same point between the same parties. The very allegations of the plaintiff in this action with respect to nonconforming use status and the validity of the zoning ordinance were affirmative defenses in the suit before the magistrate."

■ ■ The defendant had filed a motion to dismiss plaintiff's complaint, and when the plaintiff filed an amended complaint, defendant filed another motion to dismiss that complaint. The theory underlying that motion was that all defenses available to the plaintiff could have been raised in defense of the prior quasi-criminal action; that the finding of guilty in that action bound both parties to the litigation, and that those issues could not be relitigated. This is an attempt to apply the rule of res adjudicata. However, that doctrine requires that the parties to subsequent litigation be the same as those previously involved, and that the cause of action be the same.

In City of Elmhurst v. Kegerreis, 392 Ill 195, 64 NE 2d 450, the court said at page 203:

> ". . . if the first suit was between the same parties *and involved the same cause of action,* the judgment in the former suit is conclusive, not only as to all questions actually decided but as to all questions which might properly have been litigated and determined in that action." (Emphasis supplied.)

Here the cause of action in the chancery division was not the same as that in the quasi-criminal proceeding; thus res adjudicata is inapplicable.

■ The doctrine of estoppel by verdict does not require that the cause of action be the same.

> "When some specific fact or question has been actually and directly in issue and has been adjudicated and determined by a court of competent jurisdiction in a former suit, and the same fact or question is again put in issue in a subsequent suit between parties or their privities who were parties in the former suit, its determination in the former suit, if properly presented and relied upon, is conclusive upon the parties and persons in privity with them in the latter suit, without regard to whether or not the cause of action is the same in both suits, and it cannot be again litigated in the subsequent suit upon the same or a different cause of action whatever may have been the nature of the first action or of the second action in which the estoppel is set up: . . . ." Rose v. Dolejs, 7 Ill App2d 267, 275, 129 NE2d 281.

In the instant case, neither the verdict nor the report of proceedings in the quasi-criminal action was before the chancery division, and they are not before this court; therefore, it is difficult to know what issues were litigated, and the doctrine of estoppel by verdict cannot be employed. See City of Chicago v. Provus, 115 Ill App2d 176, 180, 253 NE2d 182, for the proper procedure to be followed in raising an estoppel by verdict.

At the hearing on the complaint for temporary restraining order, the following facts were disclosed. In 1925, the City of Evanston issued a building permit authorizing 10 units to be included in the projected building. Although the complaint states that "the building which was actually constructed on the said premises in 1925 contained thirteen apartments; that the defendant made no objection to the additional number of apartments upon their completion in 1925 or in any subsequent year prior to 1968; . . ." no evidence was introduced to prove these assertions.

The plaintiff seeks to prevent the City of Evanston from prosecuting it for the zoning violation, because it received a letter from a City official indicating that there were no violations other than a plumbing violation. A manually-operated check valve in the basement apartment had to be replaced due to a malfunction. The City learned of this through a complaint about the valve received on September 19, 1966. The supervisor of the Property Standards Division, who was responsible for directing the area inspections in Evanston, testified that as a result of the complaint a standard inspection was made of the premises. He explained that pursuant to such a complaint "we go directly to the area of the complaint. This is the only area we are interested in."

After the inspection was completed, a letter was mailed to the then owner of the building, which letter read in part: "An inspection of the building controlled by you at 1003 Greenleaf Street on October 14, 1966 revealed the following violations of Ordinances, of the City of Evanston: . . . ." The violation pointed out was that the plumbing fixture was not in a good sanitary working condition. The plaintiff argues that it relied on this letter when purchasing the building; that the letter is tantamount to a statement by a City official that the only ordinance violation in the building was the valve leak, since the letter states that an inspection "revealed the following violations" and lists only the valve leak.

Under Illinois law a municipality cannot be estopped unless it has engaged in positive acts by municipal officers which "may have induced the action of a party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, but mere nonaction is not sufficient to work an estoppel." Trustees of Schools v. Village of Cahokia, 357 Ill 538, 543, 192 NE 565. The letter in the instant case was not a "positive act" by a City official; therefore, it does not fall within the rule.

When the plaintiff purchased the building in January 1967, the most obvious thing to have done prior to the purchase would have been to inquire of the City concerning any and all ordinance violations in the build-

ing. This apparently was not done. Carl Weiner, president of plaintiff company, testified that he could not remember whether he had made any direct inquiry of the City of Evanston before buying the building. Benjamin Seaman, the secretary, was asked: "Prior to its acquisition, did you make any specific inquiry to any officer in the City of Evanston with respect to the legal use of this property, you personally?" He replied, "No, I did not."

Plaintiff argues that the City has allowed this violation to continue for 43 years, and that in making 17 inspections of the property during that time, it had never registered a complaint. Plaintiff further argues that the City is now estopped from complaining. The chief inspector for the Property Standards Division of the City testified that prior to 1964 there was no department authorized to conduct door-to-door inspections of existing buildings, and no staff to handle such a job. The only inspections then carried out were those of new construction sites or on complaints received of specific violations. This division was created to inspect existing buildings in Evanston to determine whether they were in compliance with the City's Housing and Zoning Codes.

Regarding the plaintiff's assertion that the building had been inspected 17 times, City records disclosed that 10 of those inspections were from the Fire Department, one from the Health Department, one from an Air Pollution Control Division, three from the Building Department, and only two from the Property Standards Division. The Fire Department inspections were made annually, that program having begun in 1959. None of the inspectors went through the whole building, but rather, looked for particular violations in particular parts of the building. However, in 1964, the City started a program whereby an entire area was singled out for full inspection by the Property Standards Division to uncover any housing or zoning violations. The property in question was inspected during one such occasion, and it was then that the zoning violation was discovered.

In Logan County Board of Sup'rs v. City of Lincoln, 81 Ill 156, 159 (written in 1876), the Supreme Court said: "It would be a pernicious doctrine to establish

that public rights of municipalities could be cut off by the neglect of the appointed officers for an unreasonable time to enforce them." The opinion further stated that "mere nonaction of its (a municipality's) officers is not sufficient to work an estoppel as against a municipal corporation." This is still true.

The plaintiff cites City of Evanston v. Robbins, 117 Ill App2d 278, 254 NE2d 536, in support of its argument. In that case the City had filed a quasi-criminal complaint against a property owner for maintaining a multiple dwelling in a district zoned for single-family dwellings. The defendant was found not guilty, and the City took an appeal. This court noted at page 280 that the multiple-family use had been in existence for 25 years and that "the City had inspected the residence as a multiple-family residence and had affirmatively directed defendant to make corrections based upon multiple-residence requirements." The court felt the doctrine of estoppel was properly invoked. However, the case differs from the one before us, since in Robbins it was "clear that the City indulged in positive acts of enforcement which required improvements by defendant consistent with multi-family use" (page 286). In the instant case, it is clear that the City did not indulge in such "positive acts."

The Robbins opinion held that under the facts presented, the defendant was entitled to the benefit of the doctrine of equitable estoppel. However, under the facts in the instant case, the plaintiff failed to show any positive acts of the City which reasonably induced a detrimental financial investment. In other words, plaintiff's predicament is not the fault of the City, and plaintiff cannot now seek to restrain the City from performing its duties.

Plaintiff cites Westfield v. City of Chicago, 26 Ill2d 526, 187 NE2d 208, for the proposition that the City was required to present evidence of a public interest which would be served by plaintiff's complying with the zoning ordinance. That case involved a declaratory judgment action, and the court balanced the interests of the property owner against the public interest and concluded that the ordinance as applied to plaintiff was unreasonable and confiscatory. However, as pointed out on

page 531, the presumption of validity of the ordinance is not overcome until "it is shown that there is no reasonable basis in public welfare requiring the restriction and that there is a resulting loss to the property owner." In the case before us, the presumptive validity of the ordinance in question has not been overcome, and there was no necessity for the City to show the public interest involved.

Finally, the plaintiff urges it was entitled to a temporary restraining order to prevent a multiplicity of suits. After its complaint was filed in the chancery division, a second complaint was filed by the City against the plaintiff for the ordinance violation here involved. Plaintiff argues that it is entitled to a restraining order to prevent the filing of a series of suits against it.

It must first be noted that the general rule is that a court of equity will not interfere with criminal processes. "The only exceptions to the rule that a court of equity will not interfere by injunction to restrain the enforcement of the ordinances of the village or city, are, 1) to prevent a multiplicity of suits, and 2) to prevent irreparable injury." Delta Die Casting Co. v. Village of Schiller Park, 17 Ill App2d 543, 545, 150 NE2d 843. However, in the instant case, the plaintiff has been found guilty of violating a City Housing Code, and now asks a court of equity to restrain the City from prosecuting it again, although the statute under which the City filed the complaint provides in pertinent part: ". . . each day's failure to comply with any such provisions shall constitute a separate violation." Section 23–13, Evanston Housing Code. Therefore, the City cannot give any assurances as to the number of suits it will file, and it remains for the plaintiff to put an end to its own injury and all of the City's suits by complying with the ordinance.

The issuance of a restraining order under these circumstances would be tantamount to a collateral attack upon the former judgment of conviction. We conclude that the chancellor properly denied the injunctive relief sought. The order of the Circuit Court is affirmed.

Affirmed.

LYONS and BURKE, JJ., concur.