12701 Shaker Blvd. Co., Appellant, *v.* City of Cleveland, et al., Appellees.

[Cite as 12701 Shaker Co. v. City of Cleveland (1972), 31 Ohio App. 2d 199.]

(No. 31425—Decided September 14, 1972.)

Mr. *Henry DuLaurence*, for appellant.
Mr. *Richard R. Hollington, Jr.*, director of law, for appellees.

DAY, C. J. For clarity the parties will be designated "plaintiffs" and "defendant" or "defendants" as in the trial court. The defendant City of Cleveland may also be called the "City" or "Cleveland."[*]

## I.

This case comes here on appeal by the plaintiff from a decision of the Common Pleas Court rendered on review of a ruling by the Board of Zoning Appeals of the City of Cleveland.

The Court of Common Pleas affirmed. We affirm the Court of Common Pleas.

## II.

Plaintiff assigns twelve errors:

I. The judgment of the Board of Zoning Appeals is null and void in that said body lacked jurisdiction as previously determined by this Court in *Kovacic* v. *City of Cleveland*, Case No. 27037.

II. Said judgment is contrary to the zoning ordinances of the City of Cleveland which do not restrict the number of rooms in a mutiple-family zone.

III. The Board denied plaintiff-appellant use of its property despite the fact that the building was legally built within the provisions of the Zoning Code in effect at the time of its construction for 101 suites as presently used on the premises, and as permitted under Section 1281-13

---

[*]All "code" or "sec." indications in this opinion are references to the Codified Ordinances of the City of Cleveland unless otherwise identified.

(d) of the Cleveland Zoning Code of 1929. (Sec. 211-22 (1945)).

IV. The decision is contrary to the weight of the evidence as presented in the trial court by the transcript from the Board of Zoning Appeals and by the pertinent and applicable zoning ordinances as presented to the trial court.

V. That the decision attempts to enforce zoning provisions retroactively contrary to Article II, Section 28 of the Ohio Constitution and the Fifth and Fourteenth Amendments of the Constitution of the United States.

VI. That the decision of the Board was arbitrary and capricious and had no relationship to the health, welfare, morals and safety of the community.

VII. That the Board of Zoning Appeals required parking facilities beyond the requirements of Sec. 211-2.5 of the Zoning Code of the City of Cleveland in effect at the time of the construction of the subject building and that such was contrary to the provisions of R. C. 713.15 which permits the establishment and existence and continuation of a non-conforming use despite the subsequent change or amendment of an existing Zoning Law.

VIII. That the Board of Zoning Appeals is restricted by Charter to act as an appellate body and, therefore, had no right to act as an administrative body and sua sponte place additional parking requirements on the premises not held in violation by the Commissioner of Housing.

IX. The Board of Zoning Appeals had no right to hold arbitrarily without legislative provision that 300 square feet of parking space was required per car for each tenant when there is no such requirement in Section 5.1118 of the Zoning Code of Cleveland of 1949.

X. That Section 5.1118 of the Zoning Code of Cleveland is invalid, illegal and unconstitutional in that it is indefinite without definite standards or rules therein provided to guide the administrative officer and unlawfully delegates to an administrative officer legislative powers as prohibited under Article II, Section 1 of the Ohio Constitution.

XI. That the plaintiff-appellant was deprived of his

constitutional rights and his day in court by being prevented from offering additional testimony in defense of his property as provided in Article I, and especially Article I, Section 16 of the Ohio Constitution, and contrary to Section I of the Fourteenth Amendment of the United States Constitution.

XII. The trial court failed to answer written interrogatories, which if answered would have required the Court to find for the plaintiff-appellant. Specifically, plaintiff-appellant inter alia placed the following interrogatories before the Court: (Interrogatories omitted.)

We are required by Rule 12, Appellate Rules, to dispose of each assigned error in writing. Assignments XI and XII are covered specifically under Section VII of this opinion. The balance of the opinion is devoted to considerations which answer the first ten. We find all twelve without merit.

### III.

In 1945, a permit was issued by the City for a seven story apartment building of 98 suites and 85 parking spaces at 12701 Shaker Boulevard and construction began. Before the original construction was finished alterations on the premises resulted in the creation of 101 suites and 19 rooms.[1]

The permit issued for the original construction did not conform to existing zoning limits. That is, it permitted construction with less than one parking space for each suite. Moreover, the alterations were made without any permit, although the plaintiff contends the work done to *alter* the original construction was within an ordinance exception making a permit unnecessary [Sec. 1007(b), Code of Cleveland, 1924].[2] Whether a permit was required or not, plaintiff insists that all the work done conformed to

---

[1]Plaintiff closed off the passageways between rooms with connecting baths in several of the larger suites. It then opened a doorway from the room with a bath to the public hall. Each of these openings created a separate single room facility with a private bath.

[2]This section does not help the plaintiff because ingress and egress appear to have been changed in the alterations—a condition lifting the permit exemption in Sec. 1007(b) *id.*

building and zoning standards applicable at the time of construction. The alleged conformance includes the claim that the original construction, and the original construction as altered, met the garage space requirements determined by law by the number of suites and individual families on the premises.[3] For its part the City contends that plaintiff relies on antiquated ordinances not in effect when the plaintiff "sought a permit * * * for the purpose of adding three suites and nineteen rooming occupancies" and further that the original construction was illegal because when the permit issued it did not meet zoning ordinance requirements then in effect and the alterations fare no better because they were made without any permit. This argument boils down to a contention that the plaintiff does not have either a conforming or a non-conforming use and therefore seeks and needs a variance to legalize noncompliance with current zoning.

It is undisputed that 1962-1963 amendments to Cleveland zoning ordinances currently control zoning in the City. It is also conceded that the original construction and alterations made in this case could not meet the requirements imposed by the zoning ordinances as amended in 1962-1963.

With respect to the City's claim that plaintiff seeks a variance, plaintiff insists that it attempted to get a certificate of occupancy for the 101 suites and 19 rooming occupancies presently at 12701 Shaker Boulevard but that because of "an arrangement between the various Cleveland Building and Zoning Departments, a person denied a certificate of occupancy because of alleged improper use and occupancy must appeal such a decision to the Board of Zoning Appeals in order to procure the necessary certificate." Thus, the plaintiff says that its present effort had to be formalized in such a way that it *appears* to be requesting a variance even though the premises were constructed, al-

---

[3]Although plaintiff refers to both Sec. 1281-13(d), 1929 Cleveland Zoning Code and Sec. 211-2.5, 1943 amendment to Cleveland Zoning Code, a close examination reveals that plaintiff apparently relies upon the latter code section, which immediately preceding 211-2.5 was numbered 1281-3 and 1281-4. See Section V of this Opinion.

tered and have always been used in a manner conforming to the zoning code in effect at the time, excepting only the formality of a permit for the alterations.[4] And, if this argument is not persuasive, the plaintiff contends it has a legal non-conforming use which cannnot be defeated by the mere technical fault represented by the failure to get legal building permits.

If, in fact, the plaintiff seeks only a certificate of occupancy, then its initial appeal properly should have been addressed to the Board of Building Standards and Appeals rather than to the Board of Zoning Appeals, *Kovacic v. Cleveland Board of Zoning Appeals*, Court of Appeals for Cuyahoga County, No. 27037, 1965, unreported. However, the critical question is whether the zoning ordinances were complied with. For this reason we have determined that the appeal is one asserting a pre-existing non-conforming use and/or the right to a variance. This establishes the jurisdiction of the Board of Zoning Appeals of the City of Cleveland (see fn. 8, *infra*). We will resolve those issues in the light of the zoning standards in effect at the time of the original construction and alterations.

## IV.

The building code controls the structural quality in building. Included in its concerns are matters of strength of materials, stresses, adequacy of weight bearing columns and walls, fireproofing, plumbing, wiring and the quality of materials. The code is administered by a Commissioner of Building[5] whose jurisdiction includes the issuance of building permits. Denials of permits, except for denials based on zoning violations, may be appealed only to the Board of Building Standards and Appeals[6] and

---

[4]See fn. 12, *infra*.

[5]The duties of the Commissioner of Building can be found outlined in Sections 1.2804 and 5.0701(a), Code of the City of Cleveland. A separate Department of Housing is now administered by a Commissioner of Housing. See Section 1.2805, id.

[6]The jurisdiction of the Board of Building Standards and Appeals can be found in Section 76-6(d), Charter of the City of Cleveland. See also *Libassi et al.* v. *The City of Cleveland et al.*, Court of Appeals for Cuyahoga County, No. 31207, 1972, unreported.

are reviewable on appeal by the Court of Common Pleas.[7]

Zoning ordinances, on the other hand, control land use (*e. g.*, types of building, heights, style, commercial, non-commercial multi-family, residential) and setbacks, sideyards, and parking. Only the Board of Zoning Appeals hears[8] complaints generated by the application of the zoning regulations. Rulings of the Board of Zoning Appeals can be taken to the Court of Common Pleas for review.[9]

Because there is no claim by the City that plaintiff is in violation of *the building code*, except in the matter of the failure (1) to get a legal permit to authorize the original construction, and (2) to get any permit at all to make the alterations, there is no other building code issue in the case. However, there is a question whether the omission determines the issue of a non-conforming use under the zoning ordinance in effect at the time (see fn. 12).

## V.

During the period 1944-1949, the time interval covering the construction at issue in the present case, the ordinances regulating zoning were extensive.[10] It is apparent, however, that the zoning compliance question of greatest import for the present litigation is governed by Sec. 211-2.5 which provides in pertinent part:

"PARKING AND GARAGES

"Section 211.2.5. (Former Sections 1281-3, 1281-4.)

---

[7] R. C. 2506.01.

[8] The jurisdiction of the Board of Zoning Appeals can be found in Section 76-6(b), Charter of the City of Cleveland. See also *Libassi et al.* v. *The City of Cleveland et al., id.*

[9] R. C. 2506.01.

[10] Sec. 1281-2; use district
Sec. 1281-3; dwelling house districts
Sec. 1281-3; 1281-4; parking and garages
Sec. 1281-11; heights districts
Sec. 1281-12; heights districts exceptions
Sec. 1281-13; area districts
Sec. 1281-14; front yards
Sec. 1281-15; rear yards
Sec. 1281-16; side yards
Sec. 1281-17; yard exceptions

"Garage and parking space.

"(a) No main buildings may be hereafter erected in a residence district without providing adequate space on the premises for the parking or garaging of the motor vehicles of the occupants, employees, patrons, clients and guests thereof. Adequate access to motor vehicle storage space from the street shall be provided on the lot and kept open and unobstructed * * *.

"* * * *

"(c) In any use districts, private garage space not to exceed 200 feet of floor area for each family occupying or permitted to occupy the premises, may be provided as an accessory use. On a lot on which hereafter any dwelling or apartment house is erected or remodeled for more than two families, *space*, not in a driveway nor nearer the street than half the depth of the lot, except in the case of a basement garage, *shall be provided and maintained for the storage of motor vehicles at the rate of at least one car for each family to be housed in the building.*"[11] (Emphasis supplied.)

"* * * *

"(Ord. No. 483-43. Passed June 25, 1943. Effective August 5, 1943.)"

The record is clear beyond peradventure that the construction and alterations in issue were made during 1945-1949 when Section 211-2.5 was the controlling ordinance. Thus, when the initial permit was issued in this case, the building which it purported to sanction was prohibited by the zoning ordinances applicable at the time and

---

[11]The ordinance carries the usual presumption of validity, *City of Dayton* v. *S. S. Kresge Co.* (1926), 114 Ohio St. 624, 629, 151 N. E. 775, 776, aff'd. 275 U. S. 505, 72 L. Ed. 396 (1927). Moreover, in our view, the emphasized portions are sufficient to save it from claims of unconstitutional vagueness. The phrases "motor vehicle" and "one car" are obviously not finite but they suffice to inform as a constitutional civil regulation must. *A. B. Small Co.* v. *American Sugar Refining Co.* (1925), 267 U. S. 233, 237-240, 69 L. Ed. 589, 593-594. The constitutional requisite does not forbid generic terms. *B. & O. R. R. Co.* v. *I. C. C.* (1911), 221 U. S. 612, 620, 55 L. Ed. 878, 883.

date of issuance, for the permit allowed the appellants 98 suites and 85 parking spaces. This was done in the face of Ordinance 211-2.5 which required a parking space for "at least one car for each family." We assume only one family per suite. Were there more, additional problems would confront the plaintiff. Additional problems or not the permit could not legalize beyond the ordinance. Therefore, the permit was a nullity authorizing nothing. It follows that the original construction was characterized by a fundamental fault from the outset—the substantive vice inherent in insufficient garage space. The fault was compounded when alterations increased the number of suites to 101 and added 19 rooming occupancies without parking additions.

It is a well-established principle of law that an illegal use cannot achieve the validation represented by a pre-existent non-conforming use so as to exempt it from a zoning regulation which became effective subsequent to the illegal use.[12] *Leigh* v. *City of Wichita* (1938), 148 Kan. 607, 613, 83 P. 2d 644, 647-648; *Eggert* v. *Board of Appeals of the City of Chicago* (1964), 29 Ill. 2d 591, 596, 195 N. E. 2d 164, 167; *Harris* v. *County Board of Appeals for Baltimore County* (1968), 249 Md. 554, 556, 241 A. 2d 123, 124; see R. C. 713.15. *Gibson* v. *Oberlin* (1960), 171 Ohio St. 1, 167 N. E. 2d 651, is not apposite. In that case a change in ordinance was not allowed to relate back to block a permit to which the appellant was entitled under the zoning enactment in force at the time of the application. See *L. & W.* v. *Beachwood* (1971), 27 Ohio St. 2d 150, 153, 271 N. E. 2d 844, 846.

---

[12]However, the mere failure to secure a permit for an otherwise legal building, in our view, would not raise an impediment proscribing a non-conforming use. The permit violation would be subject to criminal sanctions (Sec. 5.9902, formerly Sec. 211.36) and should not carry with it a further penalty imposed because a use does not meet current standards enacted subsequent to the beginning of the "non-permitted" but otherwise legal use. The municipal legislative body, by virtue of the imposition of penalties for the failure to acquire a permit for a building actually within legal standards, indicates its judgment that the penalty is sufficient to induce compliance with permit requirements or, in the alternative, to vindicate the city's interest in a failure to acquire a permit.

Construction which is substantively illegal (that is, in violation of the standards set by the building or zoning codes) is deemed, quite reasonably, an unfit subject for vindication by a principle based on lawful use pre-dating a subsequent regulation. It is for this reason that any use substantively illegal never achieves the plateau allowed a "pre-existent" non-conforming use. The use in the instant case is governed by the principle that construction and/ or alterations not made in conformity with the applicable substantive zoning regulation cannot achieve the status of a pre-existent non-conforming use and must be validated, if at all, by a variance.

It may be argued that "equity" requires a balancing of hardship after the fact of long violation. If there is equity in a prolonged violation, it has only a specious quality. The wrongdoer brought his condition on himself, cf. *Anderson* v. *City of Minneapolis* (1970), 287 Minn. 287, 289, 178 N. W. 2d 215, 217. And such balancing as the equity argument requires would surely encourage violations by holding out the prospect of an equitable cure for deliberate but long undiscovered transgressions, cf. *Eggert* v. *Board of Appeals, supra,* at 597-598, 195 N. E. 2d at 169. No zoning policy would survive the impact of so pernicious a doctrine once it was approved by the courts.[13]

----

[13]Two problems with a tangential relation to the equity doctrine merit comment because the issues they raise may also depend upon the passage of time. It may be argued that the doctrine of laches or estoppel are available to the plaintiff because approximately twenty-five years have passed since the construction of 12701 Shaker Boulevard was begun, altered and completed and the building used. However, it is the majority view that those doctrines, *p. e., S. B. Garage Corp.* v. *Murdock* (S. Ct. 1945), 185 Misc. 55, 55 N. Y. Supp. 2d 456, 458, 460; *Hilton-Acres* v. *Klein* (1961), 35 N. J. 570, 581-582, 174 A. 2d 465, 470-471, do not apply to block municipal corporations in the reasonable exercise of governmental functions, cf. *Haba* v. *Cuff* (Ct. App. Summit Cty. 1963), 28 Ohio Op. 2d 266, 269, 201 N. E. 2d 343, appeal dismissed, 176 Ohio St. 374, cert. denied sub. nom., *Cuff* v. *Van Bogart* (1964), 379 U. S. 964. Even those jurisdictions which apply the doctrine of estoppel to a municipality when its "positive acts" lead or mislead parties into situations comparable to that of the plaintiff in the instant case provide no doctrinal basis to justify plaintiff's alterations contrary to the then extant zoning regulations' parking provisions without even a sem-

210

## VI.

The Board of Zoning Appeals' transcript of the evidence presents the principal factual material in this case. Nothing was offered or added in the Court of Common Pleas except for exhibits exemplifying ordinances (Tr. 57-59), which were admitted, and a photo of a blackboard containing figures which, on objection, was refused.[14] Otherwise the transcript in Common Pleas Court consists wholly of argument and statements by counsel and colloquy with the court of a non-testimonial character. The Board of Zoning Appeals had concluded that the record before it would support a variance of only 98 apartments and the existing parking space and granted a variance for that and no more.

Absent some evidence in the record to undergird a judgment that the action by the Board was "unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable and probative evidence on the whole record,"[15] we cannot upset the Common Pleas Court's affirmance of the Board's conclusions that the variance allowed conformed to the legal standards the Board was authorized to apply. After a careful review of the record we find no basis to support reversal.

## VII.

Thus far we have not assessed the reasons for finding

blance of a permit, legal or illegal, see *G. & S. Mortgage & Investments Corp.* v. *City of Evanston* (Ill. App. 1st Dt. 2d Div. 1970), 130 Ill. App. 2d 370, 376, 264 N. E. 2d 740, 744 interpreting *City of Evanston* v. *Robbins* (1969), 117 Ill. App. 2d 278, 286, 254 N. E. 2d 536, 540, which applied the doctrine of equitable estoppel where the city indulged in "positive acts of enforcement * * * consistent" with the illegal use. Whatever such a jurisdiction might have done with the original construction in this case for which the illegal permit did issue, its theory of estoppel could not logically encompass the alterations done without a permit. No municipal action induced the condition at issue in the instant case, and no other municipal action is asserted by the plaintiff.

[14]The admissibility of the photo was at best dubious, cf. Tr. 66-67. The record reveals no effort to qualify it.

[15]Section 2506.04, Ohio Revised Code. See Board of Zoning Appeals transcript at pp. 4-5.

assignments of error numbers XI and XII without merit (see II above).

The essence of number XI is the claim that the plaintiff was denied due process of law because it was prevented from offering additional testimony in defense of its property on appeal to the Court of Common Pleas.

We find this claim empty of persuasiveness because the record will not support the claim (see VI above). Moreover, the mere filing of an affidavit[16] does not automatically quicken the statutory right nor compel the Court of Common Pleas to take additional evidence unless the record will support some one of the deficiencies enumerated in the statute, see R. C. 2506.03 and *Grant* v. *Washington Township* (1963), 1 Ohio App. 2d 84, 86, 203 N. E. 2d 859, 861.

The gravamen of assignment number XII seems to be that the failure of the trial court to answer interrogatories posed by the plaintiff amounted to the omission of findings of fact and conclusions of law required by R. C. 2315.22,[17] cf. *Cleveland Produce Co.* v. *Dennert* (1922), 104 Ohio St. 149, 135 N. E. 531. That omission if uncorrected, it is claimed, would prefer some litigants over others contrary to Article I, Sections 1 and 2 of the Ohio Constitution.[18]

In our view the constitutional concepts embodied in Article I, Sections 1 and 2 of the Ohio Constitution are

---

[16]An examination of the affidavit filed in this case discloses that the claimed deficiency in the record before the Board of Zoning Appeals lies with the omission of the relevant ordinances. Passing whether the Board and/or Common Pleas Court could judicially notice the relevant ordinances, it is the fact that the ordinances were offered by the plaintiff to the court and admitted (Tr. 58-59). The transcript does not indicate the proffer of any testimony. There is only one reference to a witness. He did not appear (Tr. 42). "Tr." references in this footnote are to the transcript in Common Pleas Court.

[17]Sec. 2315.22, Ohio Revised Code, has been superseded by Rule 52, Ohio Rules of Civil Procedure.

[18]Ohio Constitution, Article I.

§1 Right to freedom and protection of property.

All men are, by nature, free and independent, and have certain inalienable rights, among which are those of enjoying and defending life and liberty, acquiring, possessing, and protecting property, and

no impediment to reasonable procedural provisions governing appeals from administrative tribunals. Moreover, the review of the action by the Board of Zoning Appeals is not a *trial de novo, William* v. *Township Trustees* (1969), 18 Ohio App. 2d 188, 189, 247 N. E. 2d 789, 790, but the hearing of an "appeal"[19] and, therefore, not governed by R. C. 2315.22. That section is a trial section, applicable when "questions of fact" are tried by the Court. The Common Pleas Court performed an appellate, not a fact finding, function in this case limited to determining whether the decision of the Board of Zoning Appeals was supported as the statute requires.[20] Accordingly, there was no error by the reviewing court in the omission of findings of fact and conclusions of law.

*Judgment affirmed.*

KRENZLER and JACKSON, JJ., concur.

---

seeking and obtaining happiness and safety. (See Const. 1802, Art. VIII, §1.)

§2 Right to alter, reform, or abolish government, and repeal special privileges.

All political power is inherent in the people. Government is instituted for their equal protection and benefit, and they have the right to alter, reform, or abolish the same, whenever they may deem it necessary; and no special privileges or immunities shall ever be granted, that may not be altered, revoked, or repealed by the general assembly. (See Const. 1802, Art. VIII, §1.)

[19]R. C. 2506.03.

[20]R. C. 2506.04.