City of Evanston, a Municipal Corporation, Plaintiff-Appellant, v. Jay Robbins, Defendant-Appellee.

Gen. No. 53,157.

First District.

December 5, 1969.

Rehearing denied January 29, 1970.

Jack M. Siegel, Corporation Counsel of City of Evanston, for appellant.

Robert S. Romano and Philip J. McGuire, of Evanston, for appellee.

TRAPP, P. J.

Plaintiff, City of Evanston, appeals from a judgment of the Circuit Court, finding the defendant, Jay Robbins, not guilty on a quasi-criminal complaint for violation of the zoning ordinance by maintaining a multiple dwelling in a district zoned for single-family dwellings.

Defendant's answer to the complaint denied the violation, alleged that the use was legally nonconforming and alleged, as affirmative defenses, facts purporting to show that plaintiff was estopped to assert a violation of the ordinance and that the ordinance, as applied to

this property, was arbitrary and without relation to public health and welfare and was unconstitutional.

The record incorporates testimony directed to the issue of estoppel and to the validity of the ordinance as applied to the property concerned. Certain comments by the court are incorporated into the record, including:

> ". . . On the basis of everything that I have heard here, I must be forced to discharge the complaint."

The judgment entered was not guilty. The court's recorded statements were directed to the fact that multiple use had existed for 25 years, that the City had inspected the residence as a multiple-family residence and had affirmatively directed defendant to make corrections based upon multiple-residence requirements. The court expressed belief that the City's conduct fell within the doctrine of estoppel.

█ Estoppel may be invoked against a municipality where the action of a party is induced by the conduct of municipal officers with the result, that in the absence of relief such party would suffer substantial detriment or loss and the municipality would be permitted to stultify itself by retracting what its agents had done. Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 171 NE2d 605, and the cases cited therein.

The subject property is located at the northeast corner of Ridge Ave., a north and south street, and Lake Street, an east and west street. A substantial area east and north of the subject property is either R–4, general residence, R–6, general residence, R–7, general residence, B–2, business, B–3, business, B–4, business, C–2, commercial, or C–3, commercial. The subject property is thus at the southwest corner of an area which is zoned for multiple-family use, apartments and business. Immediately south of the property for one and one-half blocks, the area is zoned R–1, single-family residence.

Farther south the classification is R–6 and R–3. Commencing one and one-half blocks east on the south side of Lake Street, the area is again R–3, R–6 and B–2. To the west for two and one-half blocks, the classification is R–1 and this strip of two to three blocks wide is R–1 for about one-half mile north and one-half mile south of the subject property. The foregoing general characteristics are shown by the zoning map.

The immediate block in which the subject property is located is zoned R–6 in the east half and R–1 in the west half. Commencing with the subject property and proceeding east on Lake Street is a structure with two townhouse units which is legally nonconforming. Immediately east is another that is a legal nonconforming use. Immediately east, the classification in the block changes to R–6, and there is a ten-unit apartment building. Thus, on the north side of Lake Street, between Ridge Ave. and Oak Ave., the subject property is the only property which would be required to be conforming and single family. The balance of the east side of the block going north on Oak Ave. consists of three large homes used as multiple-family units and one additional ten-unit apartment building. In the west half of the block, commencing on the north at Grove Street, is a church which appears to occupy half of the block. South of the church is a two-family home; next, a single-family home occupied by the defendant, and next is the subject property.

The only testimony regarding the block immediately west of the subject property is that an Armenian Bishop uses the building and has one student roomer. The answer states:

". . .

"(c) The block west of defendant's block: the property immediately west of defendant's dwelling is utilized as a home for a religious order with mul-

281

tiple occupancy. The northeast corner of said block is utilized for church purposes. The middle portion of the block is used for a single-family dwelling."

The answer states as to the balance of the area:

"(d) The block northwest of defendant's block: the Ridge Avenue frontage is occupied by institutional headquarters and a playground.

"(e) . . .

"(f) The block southeast of defendant's block: the Lake Avenue frontage is occupied by a church and an elementary school.

"(g) The block south of defendant's block: the Lake Avenue frontage is occupied by a municipal park and modest single-family dwellings.

"(h) The block southwest of defendant's block: used for single-family dwellings."

The allegations of the answer are admitted by the reply to the second affirmative defense.

The defendant testified that he had lived next door to the subject property since 1943, that the subject property has seven apartment units, that it has been so used since he first knew it, and that it was so used when he purchased the property in 1956. He testified that in 1957, three city inspectors inspected the building. He took them through it. The inspectors advised him that he needed a second access to the third-floor apartment, which required construction of a stairway, that a solid door should be changed to a glass door, that electric wiring changes should be made and that he would have to have more light in the basement apartment. Defendant made the changes at a cost of $1,200 to $1,500. Defendant sought to put a second entrance on Lake Street, but was told he could not make structural changes in a legal nonconforming use.

The defendant introduced four letters received in 1959; one from the assistant Fire Marshall stating that

on reinspection all requirements of the Evanston Fire Prevention Bureau had been met in compliance with the Evanston Housing Ordinance; one from the Department of Health, stating that inspection revealed that violations had been corrected, signed "Acting Director of Housing"; one from the Department of Health stating that the reinspection disclosed that all noted violations of the Housing Code of the City of Evanston had been corrected, signed "Housing Inspector"; and one from the Director of Building referring to the unit as one in the Single-Family Dwelling District, and stating that the building violation had been corrected and the dwelling considered approved housing.

It appears that in 1964, Anthony W. Heilman, who identified himself as the Chief Conservation Inspector of the City, informed the defendant that he would have to deconvert to a single-family unit. He testified in behalf of the plaintiff in this case. The name of this witness is identical with that appearing as a signature on the letter dated in 1959 to the defendant, and executed as "Housing Inspector." He testified that his duties consisted in:

"Enforcing the Housing and Zoning Ordinance where it pertains to existing structures."

This witness, in answer to a question whether the original conversion of the property was made without permits, answered, "As far as I know." He testified that he did not know why he could not find any record of such permit and that such original conversion was made about 1948. He testified that from experience a multiple dwelling in a single-family area would generally be "derogatory."

The evidence does not establish when the premises were converted to a seven-family unit, nor under what circumstances, nor whether there were or were not building permits taken out for the conversion at that time.

It was stipulated that an evidence deposition showed that the premises were used as a single-family residence after 1925, the date of the zoning ordinance.

Plaintiff asserts, (a) that zoning ordinances are presumed to be valid and the burden is upon the defendant to show that the classification bears no substantial relation to the public health, safety and welfare; (b) that mere failure of enforcement of an ordinance does not create an estoppel against a municipality, and (c) that defendant has shown no substantial change of position based upon the positive conduct of the City.

Defendant asserts, (a) that even though the trial court did not expressly find that the ordinance as applied to defendant bore no relation to public health, safety and welfare, there was sufficient basis in the evidence for so finding, and therefore the decision of the trial court should be affirmed, and (b) that the City by its conduct is estopped from enforcing the ordinance against the defendant.

This is an historic situation in which valuable property rights are involved but there is no clear evidence that its origin, some 25 years ago, was without some form of permission by authorities. These public authorities did in 1957 order changes consonant with treating it as a legal nonconforming use. There is negligible evidence of any public interest to be served by condemning its present existence.

We have considered authorities cited by plaintiff to illustrate that laches or lack of enforcement will not estop a municipality. Certain of them do not relate to zoning problems as such, but to matters of health regulation as in City of Chicago v. Miller, 27 Ill2d 211, 188 NE2d 694; American Baking Co. v. Wilmington, 370 Ill 400, 19 NE2d 172; or to matters of safety or fire regulation as in Kaukas v. City of Chicago, 27 Ill2d 197, 188 NE2d 700; City of Chicago v. Hadesman, 17 Ill

App2d 150, 149 NE2d 425 and Meltzer v. City of Chicago, 152 Ill App 334.

Of the authorities cited by plaintiff, only Gregory v. City of Wheaton, 23 Ill2d 402, 178 NE2d 358 and People ex rel. Nat. Bank v. Cook County, 56 Ill App2d 436, 206 NE2d 441, approach the present problem. In Gregory the court found that the zoning regulation at issue was consistent with the uniform established uses in the block, and there was evidence to support the deteriorating effect of multiple-use property on values of single-family residences. In the Bank of Austin case the court expressly found that the landowner had made no change of position in reliance upon the ordinance, and implicit in the opinion is the fact that the ordinance as changed was consistent with the use established by the plaintiff himself.

We think the present situation is more analogous to that found in Westfield v. City of Chicago, 26 Ill2d 526, 187 NE2d 208. There a single-family dwelling was converted prior to plaintiff's ownership to four apartments. This was done after the zoning ordinance. As in this case, the block including the subject property was divided. The south half of the block was R–4 as were two blocks south and some to the east. The subject property was on the north half, and it, together with several blocks to the north were zoned R–1. There were several institutional uses in the neighborhood. The court, in the Westfield case, pointed out that although the property had been used as multifamily for ten years, there was no evidence of decrease in value of surrounding property. Here the property had been so used for 25 years, and there is no specific testimony whatsoever as to a tendency to deteriorate this neighborhood.

■■ While the testimony of defendant lacks detail in this respect, it is clear that defendant's compliance with the City orders of 1957 induced detriment, and the

record shows that the deconversion sought by the City would require at least the removal from the building of six of the seven present kitchens. Future detriment may be considered for purposes of the doctrine of estoppel. New-Mark Builders, Inc. v. City of Aurora, 90 Ill App2d 98, 233 NE2d 44. It is clear that the City indulged in positive acts of enforcement which required improvements by defendant consistent with multifamily use. This is a case, as in Westfield, where detriment to the defendant is established with no apparent benefit resulting to the public.

 While a city may not be estopped by mere inaction and may never be estopped when matters of public health and safety are concerned, nevertheless, it is said:

"Municipal corporations, as well as private corporations and individuals, are bound by the principles of fair dealing."

New-Mark Builders, Inc. v. City of Aurora, 90 Ill App2d 98, 233 NE2d 44. If, under all of the circumstances, the affirmative acts of the City have created a situation where it would be unjust or inequitable to permit it to deny what it has done or permit it to be done, the doctrine of estoppel may be applied against it. Stahelin v. Board of Education, School Dist. No. 4, DuPage County, 87 Ill App2d 28, 230 NE2d 465; People ex rel. Beverly Bank v. Hill, 75 Ill App2d 69, 221 NE2d 40.

██ ██ In zoning cases the doctrine of estoppel may be applied where the record suggests that the detriment to the public is negligible; Cities Service Oil Co. v. City of Des Plaines, 21 Ill2d 157, 171 NE2d 605, or the record shows that public welfare does not require the restricted use. Under such circumstances it is said that the presumption of the validity of the ordinance is "dis-

sipated." Village of Oak Park v. Gordon, 32 Ill2d 295, 205 NE2d 464.

■■ In this action plaintiff is required to prove the violation by a clear preponderance of the evidence. While the court did not directly pass upon the issue of whether the zoning was arbitrary and unreasonable, the doctrine of estoppel when applied against a municipality considers such factors. Upon this record it cannot be said that the court erred in applying the doctrine of estoppel, or that the evidence of the present zoning classification and the existence of a present nonconforming use is sufficient to establish a violation of the ordinance.

The judgment of the court below is affirmed.

Affirmed.

SMITH and CRAVEN, JJ., concur.