THE CITY OF GENEVA, Plaintiff-Appellee, *v.* BRADLEY NELS NELSEN, d/b/a Available Real Estate, Defendant-Appellant.

Second District (1st Division)    No. 74-386

Opinion filed May 6, 1976.

Konstans & Catella, of St. Charles, for appellant.

Johnson & Marshall, of Wheaton, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff city sought to enjoin the operation of a real estate business in defendant's property which is in a multifamily zoning district of Geneva. The defendant property owner filed a counterclaim alleging that the zoning ordinance was unconstitutional as applied to his property; and also asserted the affirmative defense of estoppel. The trial court dismissed defendant's counterclaim prior to trial and ordered the injunction requested by the city to issue. The defendant appeals.

The subject property is in the "Multi-Family Dwelling" zoning district under the 1969 city zoning code. Prior to 1970 the property was used as a multifamily dwelling. Some time in 1970 it was purchased by one Joseph Crandall who converted the main floor to an accounting office after securing a building permit which the city claims was issued under a misunderstanding as to the location of the property. It was so used from

1970 to March of 1973. On March 7, 1973, the defendant Bradley N. Nelsen purchased the property and on March 19, 1973, began operating a real estate business in the building. It was stipulated that defendant began construction work on the premises after March 19, 1973, but before issuance of a building permit on April 25, 1973.

In March or April of 1973, Wayne Heninger, the Comptroller of the city who was responsible for the Department of Building Commissioners advised defendant that the operation of the real estate office violated the zoning regulations and that a special use permit and a building permit were required. Heninger testified that defendant agreed to apply for the permits.

Heninger testified that the next time he saw Nelsen was at the June 11 Plan Commission meeting. Prior to that time, however, he had sent a letter to Nelsen dated May 15, 1973, in which he advised defendant that the neighbors had complained concerning the lighting of the building and that, in his opinion also, the lighting was excessive. The letter requested that defendant limit the lighting to a certain maximum "in compliance with the intent of the ordinance." The witness said he next saw Nelsen at the Plan Commission meeting on June 11 in connection with the application for a special use variation which defendant had applied for on April 26, 1973. He stated that the defendant said that he would withdraw his petition when it appeared that there were objectors present, and did so. He testified that there had been no substantive discussions with defendant concerning rezoning at that time.

Heninger also stated that a building permit had been issued on September 19, 1973, to replace the porch, patio and sidewalk which he understood was in a dangerous condition and needed repair. The permit was issued for this reason and because in the city's view it did not expand the use that was already being made of the premises. The permit in evidence stated an estimated cost of $2,500. Mr. Heninger stated that a building permit had been issued to the prior owner, Mr. Crandall, on a request for an accounting office use which appeared to be for a building on the northeast corner of Ford and North First Streets, in a commercial zone, but which turned out to be for the subject property. He therefore personally considered that the use was nonconforming.

John E. Davis, the building commissioner and zoning enforcement officer of the City of Geneva, testified that he had first issued a building permit to the defendant Nelsen dated April 25, 1973, for work described as "interior remodeling" which included electrical work for a total estimated cost of $4,000. He said that at the time he issued the permit he knew that defendant was using the premises for an office, downstairs and partly upstairs, and for living quarters upstairs. He said he suggested to Nelsen that there was a possibility of his not having a special use required

under the multifamily zoning and that he should go before the zoning board of appeals and request a special use. He also testifed that he issued the second permit dated September 19, 1973, after a discussion with Nelsen as to a porch floor that was badly sagging and in need of repair. He also discussed the possibility of putting a new sidewalk from the porch out to the public sidewalk and also a small patio at the southwest corner of the building. At the time he issued the second permit he was aware that the special use permit had not been obtained. He said he did it because the things that were requested could have been done in a multifamily classification. He was also present at the zoning hearing on June 11 and said that he had no substantive discussions with defendant concerning rezoning at that time.

This was also corroborated by the chairman of the Plan Commission, James F. Keiser, who testified that the discussions at the zoning hearing centered on defendant's inability to get along with his neighbors and on his desire to withdraw the petition.

Defendant testified that he made inquiries of Davis, the building and zoning commissioner, before purchasing the property and was told that he could use the property for a real estate business since it conformed to the use by the previous owner for an accounting office. He said that the application for a special use variation followed a discussion that if the building were destroyed he could be deprived of the "nonconforming" use. He testified that he made the same inquiry of Comptroller Heninger and was given the same answers. He stated that after moving he started some remodeling before the issuance of the first building permit. He testified that he had expended approximately $24,000 for work on the premises, which included floor coverings, carpet work and tile. He did not testify as to the relative amounts of expenditures prior to issuance of building permits.

Defendant testified that he withdrew the petition for a variation at the zoning meeting because he had been assured by Heninger, Davis and another official that it would be unnecessary.

Defendant also testified that the city had issued him a permit to erect a sign on the premises. While this permit does not appear as an exhibit the city has conceded that it was issued on some date in April.

Defendant first contends that the City of Geneva has acquiesced in and ratified the conduct of the defendant in his business use of the property and is therefore estopped from enforcing its zoning ordinance against him. Defendant relies upon the issuance of the building permits, the issuance of a sign permit, and the substantial expenditures he claims to have made for remodeling of the premises.

The city responds that the defendant has not made a case for application of the doctrine of estoppel because he has failed to show

either that he acted in good faith, that he relied on affirmative municipal action or that he made a substantial change of position in reliance on the acts of the city.

In *Gregory v. City of Wheaton*, 23 Ill. 2d 402, 407-08 (1961), the court states the general doctrine of equitable estoppel as applied to municipal conduct:

> "It has long been established that the doctrine of equitable estoppel is applicable to municipal corporations. In *People ex rel. Beardsley v. City of Rock Island*, 215 Ill. 488, the rule was expressed as follows: 'Where a party acting in good faith under affirmative acts of a city has made such expensive and permanent improvements that it would be highly inequitable and unjust to destroy the rights acquired, the doctrine of equitable estoppel will be applied.' But before the doctrine can be invoked there must have been some positive acts by the municipal officers which may have induced the action of the adverse party. Mere nonaction is not enough. (*People ex rel. Petty v. Thomas*, 361 Ill. 448; *Melvin v. Community Consolidated School Dist.* 312 Ill. 376.)"

See also *City of Chicago v. Miller*, 27 Ill. 2d 211, 215-16 (1963).

The trial judge in a bench trial found that defendant's use of the property was in violation of the city zoning ordinance for the "R-3 Multiple Family District," in the absence of a special use permit and that defendant was conducting his business without the special use permit. He made the following findings of fact:

> "10. Over a period of years, both as to Defendant and his predecessor in title, there was some acquiescence on the part of city officials, particularly in the issuance of building permits, condoning the use of the property at 227 North First Street, Geneva, in a manner not allowed under the zoning classification, but that acquiescence was insufficient to constitute estoppel against Plaintiff in the enforcement of its ordinance.

> 11. The evidence does not preponderate in favor of the Defendant's argument that various officers or employees of Plaintiff led Defendant to believe that he would be granted the relief he sought as to a special use on the property.

> 12. Defendant was well aware of the zoning difficulties involved but proceeded nevertheless to expend monies in remodeling before the zoning problems had been resolved.

> 13. The evidence does not preponderate in support of the proposition that Defendant substantially and adversely altered his position in reliance on action or inaction by Plaintiff in that the alterations to the building may be beneficial for the use of the property as a residential dwelling."

We conclude that these findings are not against the manifest weight of the evidence.

The trier of the facts did not find defendant's testimony that he had been assured by the city officials that he could use the property for a business and professional use even though this would be in nonconformance with the existing zoning to be credible. At best the record merely shows that the city had acquiesced in a previous owner's use of the property as an accounting office; that the officials wrongfully assumed that a use similar to the previous use as an accounting office would be nonconforming; but that they had clearly advised defendant before he had made substantial improvements that he could only so use the property for his purposes provided he applied for and received a special use permit together with the proper building permits. The fact that defendant agreed to apply for a special use variation strongly supports this conclusion. The court was not required to believe defendant's claim that the application was withdrawn because it was found to be unnecessary, contrary to the testimony of the city's witnesses.

The court could also conclude that defendant did not act in good faith in continuing to make expenditures amounting to $24,000 on the basis of building permits to remodel the premises, particularly when the permits on their face were consistent with the present zoning classification and amounted to estimates of only $4,000 and $2,500 respectively.

Moreover, the record is insufficient to show that the defendant has incurred a substantial loss by reason of the improvements.

■■ On the record the court could properly conclude that defendant was aware of the zoning difficulties but proceeded nevertheless before the zoning problems had been resolved and that there was no proper reliance on the statements and acts of the city sufficient to work an estoppel. See *Gregory v. City of Wheaton*, 23 Ill. 2d 402 (1961); *City of Chicago v. Miller*, 27 Ill. 2d 211 (1963); *City of Chicago v. Zellers*, 64 Ill. App. 2d 24, 29-30 (1965).

We find the cases in which a party has been induced to proceed by the conduct of municipal officers and where he would in the absence of relief suffer a substantial loss to be factually distinguishable. Compare *Cities Service Oil Co. v. City of Des Plaines*, 21 Ill. 2d 157 (1961); *City of Marseilles v. Hustis*, 27 Ill. App. 3d 454 (1975); *Emerald Home Builders, Inc. v. Kolton*, 11 Ill. App. 3d 888 (1973).

Defendant also contends that the trial court erred in dismissing his counterclaim which sought to challenge the constitutionality of the city zoning ordinance classifying the subject property as "R-3 Multiple Family Dwellings." It appears, however, that the court in dismissing the counterclaim gave the defendant leave to file affirmative defenses. The defendant answered and filed the affirmative defense setting up the

estoppel issue without alluding to the defense that the zoning ordinance was unconstitutional as applied. No further mention was made of the constitutional issue at trial.

Defendant contends that the court precluded his raising the issue by ruling that he had not exhausted his administrative remedies (presumably by seeking a special use permit) and that he therefore could not raise the defense.

■■ We cannot agree. It is true that the unconstitutionality of an ordinance allegedly violated is available as a defense without prior exhaustion of administrative remedies. (See *Westfield v. City of Chicago,* 26 Ill. 2d 526, 529 (1962); *County of Lake v. MacNeal,* 24 Ill. 2d 253, 259 (1962).) But the defendant was not precluded from raising this as a defense by the court's ruling which dismissed his counterclaim. (*City of Evanston v. Robbins,* 117 Ill. App. 2d 278, 287 (1970).) In *Robbins,* the court held that the doctrine of estoppel when applied to a municipality includes the consideration whether the zoning is arbitrary and unreasonable. Defendant did not, however, either plead facts relating to this issue under his defense of estoppel nor did he adduce evidence directed to that issue at trial. He therefore is precluded from raising the issue here.

The purport of defendant's argument that the court should have required that the city prove defendant's violation of the zoning ordinance by a clear preponderance of the evidence (citing *City of Evanston v. Robbins,* at 287) is not entirely clear. Defendant concedes that he has the burden to show that the ordinance as applied to him is unconstitutional. Defendant did not raise any claim that his act was permitted under the zoning ordinance. Instead he sought to challenge the application of the ordinance by asserting the estoppel defense. We fail to see, therefore, the relevance of defendant's argument as to the burden of proof.

The judgment is affirmed. We, of course, express no opinion as to the merits of defendant' position should he seek a special use permit from the proper local authorities or pursue proper remedies to prove the invalidity of the zoning restriction as applied to his property.

Affirmed.

GUILD, P. J., and HALLETT, J., concur.