VAHE E. BOYAJIAN & another vs. BOARD of APPEAL OF
WELLESLEY & another.

Norfolk.    March 14, 1978. — April 25, 1978.

Present: HALE, C.J., GRANT, & BROWN, JJ.

*Zoning*, Variance.

In a zoning appeal the trial judge was warranted in ruling that the
board had not exceeded its authority in granting a variance to
permit the construction of a medical office building in a district
zoned for single family residences where the judge found that on the
site at the time of trial was an unoccupied dilapidated wooden
structure used as a clubhouse by a fraternal organization, that the
property was situated on a heavily travelled road and on the edge
of a commercial district, that parking meters had been placed in
front of the property but nowhere else along the residentially zoned
section of the road, that use of the site for residential purposes was
highly unlikely, that there was a need in the town for a medical unit
such as the one planned, and that the proposed use would not
reduce property values. [284-287]

CIVIL ACTION commenced in the Superior Court on
November 5, 1976.

The case was heard by *Lynch*, J.

*Kennard I. Mandell* (*Barry D. Ziff* with him) for the
plaintiffs.

*Sumner D. Goldberg* for Roy T. LaRossa.

*Albert S. Robinson*, Town Counsel, for the Board of
Appeal of Wellesley.

HALE, C.J. This is an appeal from a judgment of the
Superior Court affirming a decision of the board of ap-
peals of the town of Wellesley (board) granting a special
permit (G. L. c. 40A, § 15[2], as amended through St. 1958,
c. 381) and a variance (G. L. c. 40A, § 15[3], as amended
through St. 1958, c. 381) to Roy T. LaRossa to allow the

construction of a medical office building on the subject property (locus), which is in a district zoned for single family residences. The plaintiffs, owners of property located in the same zone as the locus, complain that the board exceeded its authority in granting the permit and variance to LaRossa. Because we hold that the board did not exceed its authority in granting the variance, we need not address the questions presented by the granting of the permit.

"[T]he burden rests upon the person seeking a variance and the board ordering a variance to produce evidence at the hearing in the Superior Court that the statutory prerequisites have been met and that the variance is justified." *Dion* v. *Board of Appeals of Waltham*, 344 Mass. 547, 555–556 (1962). Before a variance can be granted, all of the requirements set forth in G. L. c. 40A, § 15(3),[1] must be satisfied. *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 355 Mass. 460, 462 (1969), and cases cited. Both the board of appeals and the judge must make findings as to each of the statutory prerequisites of a variance. *Cass* v. *Board of Appeal of Fall River*, 2 Mass. App. Ct. 555, 557 (1974). The case was before the judge on admissions in the pleadings, stipulations made by the parties during the trial, testimony, and exhibits. At the close of the evidence the judge took a view of the locus and the surrounding area. As the evidence is not before us, the only issue presented is whether the board and the judge made specific findings demonstrating that the statutory prerequisites have been met. *Josephs* v. *Board of Appeals of Brookline*, 362 Mass. 290, 291 (1972). *Werner* v. *Board of Appeals of Harwich*, 2 Mass. App. Ct. 647, 648 (1974). We summarize the principal facts found by the Superior Court judge.

---

[1] The parties stipulated during trial that this case is governed by G. L. c. 40A, as in effect prior to January 1, 1976, and that the changes in that chapter which were effected by St. 1975, c. 808, § 3, are not involved.

The locus contains 31,715 square feet of land and is located within but on the boundary of a single residence zoning district. On the site at the time of trial was an unoccupied, seriously dilapidated wooden structure which had been owned by the Wellesley Knights of Columbus and used by them as a clubhouse for the past twenty-five years.[2] The locus is situated on a heavily travelled service road or ramp which leads to and from Wellesley Square. Traffic is especially heavy on this road at peak shopping hours. Next to the locus, on its westerly side, is an appliance and television repair store. Next to the store is a filling station, followed by a series of from eight to ten businesses and other properties devoted to commercial uses. Between the locus and the above mentioned store and directly abutting the locus is a right of way ten feet wide leading to a vacant lot containing 130,-000 square feet of land behind the locus. Parking meters have been placed in front of the locus but nowhere else along the residentially zoned section of the road. On the easterly side of the locus is an occupied single family residence.

LaRossa and his son (a physician) acquired title to the locus as joint tenants by deed dated February 28, 1976. They intended at that time to construct a medical office building on the site to accommodate the son and eight other physicians specializing in internal medicine, endocrinology, cardiology, gastroenterology and associated specialties. The physicians would have their offices in the building and would see their patients there. The offices are designed to provide adequate space for examination of patients, full service X-ray facilities, and a modern laboratory, all presently unavailable in Wellesley under

---

[2] The building was razed after the judge took the view but before he wrote his findings in which he indicated his awareness of that fact. It is clear that the judge's conclusions were not based on the existence of the building. He found that the condition of the building was such that it "could not be renovated or rehabilitated" for single family residence use.

one roof. There is a need in Wellesley for such a unit as the one proposed, and its presence will tend to stem the flow of doctors from Wellesley to buildings outside the town.

The judge and the board found that to allow this variance would enhance rather than detract from the public good. The proposed use of the locus would not reduce the value of any property within the zoning district but would, rather, tend to increase property values. Plans for the proposed building indicate that existing trees and the stone wall in front of the building would be retained. Adequate parking would be provided. While the use of the proposed building would add some traffic to the flow on the service road, no significant increase in traffic would result. The judge also found that, given the foregoing facts and the topography of the locus, none of which affected other parcels in the zoning district, it was highly unlikely that the locus would be usable for residential purposes, (the board had also found the locus to be unsuitable for a single family dwelling), and that the locus would thus suffer a special hardship not shared by other properties in the zoning district.

The judge ruled that the board had not exceeded its authority in granting the variance because it had "found that each of the necessary preliminary conditions to the grant of a variance existed, and that it adequately stated the reasons therefor by definite statements of rational causes and motives." G. L. c. 40A, § 15(3). The specific findings of the judge and of the board met the statutory requirements (1) that, owing to conditions especially affecting the locus but not affecting generally the zoning district in which it is located, a literal enforcement of the by-law would involve substantial hardship; and (2) that desirable relief may be granted here by way of a variance without substantial detriment to the public good and (3) without nullifying or substantially derogating from the intent and purpose of the by-law.

The plaintiffs argue that the proximity of the locus to a business zone which has become highly commercialized is not persuasive on the issue of substantial hardship. The argument attempts to focus too narrow a point. Close proximity to a highly commercialized area is one factor which can be considered in concluding that a parcel of land is "economically useless" for the development of single family residences. See *O'Brian* v. *Board of Appeals of Brockton*, 3 Mass. App. Ct. 740 (1975); *Hunt* v. *Milton Sav. Bank*, 2 Mass. App. Ct. 133, 139–140 (1974), and contrast cases cited. The decision in *Coolidge* v. *Zoning Board of Appeals of Framingham*, 343 Mass. 742, 745 (1962), is not to the contrary.

The board imposed conditions on the granting of the variance. G. L. c. 40A, § 15(3). Among other things, the board required that the final plans be submitted to it for approval, that the landscaping be maintained to the satisfaction of the board for the life of the building, and that all traffic from the locus entering onto the service road should make a right hand turn only. These requirements indicate that the board as well as the owners intend to ensure that the purpose of the zoning by-law is served by the building.

We hold that on the facts found by him the judge was correct in ruling that the board had made the preliminary findings required of it and that it had not exceeded its authority in granting the variance. See *Johnson* v. *Board of Appeals of Wareham*, 360 Mass. 872 (1972), and cases cited; *Broderick* v. *Board of Appeal of Boston*, 361 Mass. 472, 479 (1972).

*Judgment affirmed.*