**Duncan FIELDS, Appellant,**

v.

**KODIAK CITY COUNCIL, sitting as the Board of Adjustment for the Kodiak Island Borough, Appellee.**

**No. 4948.**

Supreme Court of Alaska.

June 5, 1981.

---

William D. Artus, Artus & Choquette, P. C., Anchorage, for appellant.

Wev W. Shea and Robert J. Mahoney, Cole, Hartig, Rhodes, Norman & Mahoney, Anchorage, for appellee.

## OPINION

Before RABINOWITZ, C. J., CONNOR, and BURKE, JJ., and MOODY and COOKE, Superior Court Judges.

CONNOR, Justice.

This is an appeal from a decision of the Kodiak city council, sitting as a board of adjustment, which denied appellant's request for a variance from a local zoning ordinance.[1] The superior court ruled that the "clean hands" doctrine precluded appellant from obtaining the relief sought and, alternatively, that the board's denial was supported by substantial evidence. We disagree, and remand the case so that specific findings of fact may be made by the board of adjustment.

In 1972, Duncan Fields purchased the property giving rise to this dispute. At that time the land was improved with a single family residence. The house was nonconforming, but was "grandfathered in" under the local zoning ordinance. Kodiak Island Borough Code (hereafter KIBC) 17.-36.010.

Because of an expanding family, Fields decided to increase the size and height of the original structure. In August of 1977, Fields obtained a blank application for a building permit from a Mr. Mulitalo, the borough's zoning administrator. After partially completing the application, Fields presented both the application and the plans for the addition to Mr. Slagle, a city building inspector. Mr. Slagle and Fields then completed the specifications portion of the application together. After completing the application, Fields left the plans with Mr. Slagle and paid the permit fee.

Fields then went back to see Mr. Mulitalo. When reviewing the application, Mulitalo noticed that the plot plan portion of the application was not completed. Although Mulitalo completed the application, there is a dispute as to who supplied the figures reflecting the distance the house and the addition were set back from the front and side property lines. Fields claims Mulitalo

used an architect's scale to calculate the setback measurements from a lot plat dated April 3, 1960. Mulitalo contends that Fields provided the setback information. The application states that the left side lot setback is 15 feet when, in fact, it ranges from slightly less than one and one-half feet at the junction of the original house and the addition to approximately two and one-half feet at the rear of the addition. The application correctly states that the front yard setback is seven and one-half feet.

Title 17 of the Kodiak Island Borough Code contains the zoning requirements applicable to Fields' property. Section 17.18.-040 requires a front yard setback of twenty-five feet and side yard setbacks of twenty-five feet or ten percent of the width of the lot, whichever is less. Any nonconforming use existing prior to the effective date of the code may be continued; such nonconforming use, however, may not be altered or enlarged in any way. KIBC 17.36.010. Section 17.45.030 gives the planning department discretion to approve permits where the front yard setback is less than twenty-five feet if seventy-five percent of the buildings in the area are also situated less than twenty-five feet from the front lot line. The code does not confer similar discretion on the department with respect to side setbacks. There is some evidence, however, that the department did, in fact, exercise such discretion in the past with respect to side yard setbacks. Fields' lot is approximately forty-four feet wide, so the required side lot setback is about four and four-tenths feet. The actual side setback is approximately one and one-half feet to two and one-half feet.

Because Fields' front yard setback was less than twenty-five feet, it was necessary for Mulitalo to conduct an on-site inspection to determine whether seventy-five percent of the buildings in the area had similar front setbacks. After measuring Fields' front yard and the front yards of several of the houses in the neighborhood, Mulitalo

1. Although a borough zoning ordinance is involved, the Kodiak city council acts as the board of adjustment for the area within the city's boundaries. AS 29.33.110.

approved the permit. Mulitalo did not measure the side setbacks. At the time of the inspection, there was a fence approximately two and one-half feet from the left side of Fields' existing house. It was thus apparent that the existing sidelot setback was nonconforming, but this assertedly went unnoticed. When he approved the building permit, Mulitalo wrote on its face that no variance was required for the addition.

In December of 1977, Fields began construction of the addition. In April of 1978, Mr. White, a neighboring landowner and a member of the Kodiak city council, informed Mr. Harry Milligan, the borough planning director, that Fields' addition was in violation of the borough's zoning ordinances. On May 31, 1978, Milligan advised Fields that his residence and addition were in violation of the side setback requirement. On June 7, 1978, Fields requested a variance. Fields filed a completion notice on June 14, 1977, stating that the structure had been completed on June 4, 1977. At the time of completion, Fields had incurred approximately $60,000 in construction costs. On June 26, 1978, the borough's planning and zoning commission issued a stop work order. On July 3, 1978, that commission denied Fields' variance request, despite the planning staff's recommendation that a variance be granted. Fields appealed the commission's denial to the board of adjustment. Fields' appeal stayed the stop work order issued on June 26, 1977. AS 29.33.-120.

On August 24, 1978, the city council, sitting as the Kodiak board of adjustment, held a hearing to consider Fields' request for a variance. Mr. Artus, Fields' attorney, argued that the four requirements for the granting of a variance under KIBC 17.66.-090(B) had been met. Mr. Artus also argued that regardless of whether Fields satisfied the four requirements, a variance should be granted under the doctrine of equitable estoppel. At the close of the hearing, the board voted to deny Fields a variance. The board did not issue findings of fact. White testified at the hearing, but did not vote.

Fields then appealed the board's decision to the superior court. The appeal stayed enforcement proceedings. AS 29.33.130. The borough has not indicated what action, if any, will be taken with respect to the sidelot setback violation.

Fields asked the superior court to hold Kodiak estopped from denying him a variance and, alternatively, to limit any sanction imposed for the violation of the ordinance to $500.00. The superior court did not take additional testimony; its review was based on the record. The court held that Fields was precluded from seeking equitable relief by the "clean hands" doctrine, and that there was substantial evidence to support the board's decision.

An initial observation must be made. The parties have argued at length about whether the board of adjustment was estopped from denying Fields a variance for the setback violation. Fields' estoppel claim is premised upon his detrimental reliance on the validity of the building permit, and on the inspector's written statement on the permit that no variance was required. In the present posture of this case, however, estoppel is not an issue. In the zoning context, estoppel is a defensive claim raised to prevent enforcement of a zoning ordinance.[2] 4 A. Rathkopf, The Law of Zoning

---

2. None of the estoppel cases that appellant cites are applicable here. Many fall within the category described above: estoppel was raised as a defense in an enforcement proceeding. *See City of Marseilles v. Hustis*, 27 Ill.App.3d 454, 325 N.E.2d 767 (1975); *City of Chicago v. Grendys Bldg. Corp.*, 4 Ill.App.3d 634, 281 N.E.2d 708 (1972); *City of Evanston v. Robbins*, 117 Ill.App.2d 278, 254 N.E.2d 536 (1969); *State ex rel. May v. Hartson*, 167 Mont. 441, 539 P.2d 376 (1975); *Rosenthal v. City of Dal-*las, 211 S.W.2d 279 (Tex.Civ.App.1948). One applied estoppel against complaining adjacent landowners who were seeking to have a variance revoked. *Hill v. Board of Adjustment*, 122 N.J.Super. 156, 299 A.2d 737 (App.Div. 1972). Another refused to enjoin a zoning violation on the ground that the equities did not warrant injunctive relief. *Grand Haven Township v. Brummel*, 87 Mich.App. 442, 274 N.W.2d 814 (1978).

and Planning § 67–1 (4th ed. 1980). The defense typically applies where a property owner receives a permit that was beyond the power of an administrative officer to grant, the owner detrimentally relies on the validity of the permit, and the local government attempts to revoke the permit and then enforce the ordinance. But "[i]t is not the function of ... [the board of adjustment] to consider matters such as estoppel ... in determining whether a variance should be granted." *Carini v. Zoning Board of Appeals*, 164 Conn. 169, 319 A.2d 390, 393 (1972), *cert. denied*, 414 U.S. 831, 94 S.Ct. 64, 38 L.Ed.2d 66 (1973). Nor is the board to decide equitable questions of "clean hands." Rather, the board's power is restricted to that provided by the zoning ordinance and its enabling legislation. *City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 635 n.31 (Alaska 1979). Thus the Kodiak board of adjustment's function was to determine whether the requirements for a variance were met and, if so, to grant the variance. *See* AS 29.33.110; KIBC 17.66.-090, 17.69.020.

The only proper issue on appeal is whether the board's denial of the variance is supported by substantial evidence. *Galt v. Stanton*, 591 P.2d 960, 962–63 (Alaska 1979); *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963). Questions of estoppel and "clean hands" are not relevant to this question.[3]

▪ In order to obtain a variance under the zoning ordinance, Fields was required to establish the following:

"1. That there are exceptional physical circumstances or conditions applicable to the property or to its intended use or development which do not apply generally to the other properties in the same land use district;

2. That the strict application of the provisions of this title would result in practical difficulties or unnecessary hardship;

3. That the granting of the variance will not result in material damage or prejudice to other properties in the vicinity nor be detrimental to the public health, safety or welfare;

4. That the granting of the variance will not be contrary to the objectives of the comprehensive plan."

KIBC 17.66.090(B). The burden was on Fields to provide evidence showing that these conditions were met. *City & Borough of Juneau v. Thibodeau*, 595 P.2d at 635; *Kelly Supply Co. v. City of Anchorage*, 516

---

Others stand for the proposition that once a benefit is conferred upon a landowner who subsequently relies on it, the local government can be estopped from denying the initial validity of its act. *See Woodie v. Byram*, 132 Cal. App.2d 651, 282 P.2d 920 (1955) (where city issues series of business licenses notwithstanding business' violation of zoning ordinance, city is estopped from denying renewal of license on ground that business was previously in violation of zoning ordinance); *Bregar v. Britton*, 75 So.2d 753 (Fla.1954), *cert. denied*, 348 U.S. 972, 75 S.Ct. 534, 99 L.Ed. 757 (1955) (city estopped, on facts, from revoking particular zoning classification as applied to plaintiff's land); *King County v. Commercial Waterway Dist.*, 42 Wash.2d 391, 255 P.2d 539 (1953) (governmental agency estopped, as between it and purchaser, from denying validity of sale of its land). Under these latter cases, appellee may have been estopped from revoking the building permit, or from revoking a variance had one been granted, but the proper procedural vehicle for asserting this claim would have been by way of either a defense in an enforcement proceeding or in an action for declaratory relief.

For previous discussions in our case law regarding claims of estoppel in general, see *Jamison v. Consol. Utils., Inc.*, 576 P.2d 97, 102–03 (Alaska 1978); *Arctic Contractors, Inc. v. State*, 564 P.2d 30, 40 (Alaska 1977); *Dresser Indus., Inc. v. Foss Launch & Tug Co.*, 560 P.2d 393, 396 (Alaska 1977).

3. We do not mean to imply, however, that Fields is not entitled to estop the city or borough from actually enforcing the zoning ordinance against his nonconforming use. Indeed, on the limited record before us it appears that Fields may have a strong claim for estoppel. That claim, however, should be raised as a defense to an enforcement action or as a claim for declaratory relief. Our disposition of this case is without prejudice to Fields' right to raise estoppel in an appropriate proceeding. For example, in our recent opinion in *Pioneer Sand & Gravel v. Municipality of Anchorage*, 627 P.2d 651 (Alaska 1981), we held that an action for inverse condemnation and declaratory relief should be remanded for consolidation with an administrative appeal.

P.2d 1206, 1211 (Alaska 1973); *Boyajian v. Board of Appeals*, 6 Mass.App. 283, 374 N.E.2d 1237, 1237–38 (1978). The lack of countervailing evidence does not alone establish that this burden has been met. *Hazelton v. Zoning Board of Appeals*, 48 Ill. App.3d 348, 6 Ill.Dec. 515, 363 N.E.2d 44, 48 (1977). As a final limitation on when a variance may be obtained, state law provides that "[a] variance shall not be granted because of special conditions caused by actions of the person seeking relief or for reasons of pecuniary hardship or inconvenience." AS 29.33.110(c).

■ The duty of the board of adjustment was to reach a decision on the variance request that is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Keiner*, 378 P.2d at 411. The duty of this court, and that of the superior court below, is to determine whether such evidence supports the board's conclusions. Fulfilling that duty is difficult where, as here, the board fails to make findings regarding the conditions for a variance. Although our prior cases have clearly articulated the substantial evidence test, they have failed to clarify whether local zoning or adjustment boards must always set forth findings, nor have they illuminated the proper relationship between the evidence, findings, and ultimate agency action.

■ The threshold question in an administrative appeal is whether the record sufficiently reflects the basis for the board's decision so as to enable meaningful judicial review. In previous administrative appeals we have declined to impose a specific requirement that findings be prepared when we were able to determine the basis for the challenged decision. Thus in *Mobil Oil Corp. v. Local Boundary Commission*, 518 P.2d 92 (Alaska 1974), challenging the administrative approval of the incorporation of the North Slope Borough, we rejected the argument that the boundary commission was required to issue findings because no statute required findings and we were able to determine from the record the basis for the commission's decision. *Id.* at 97. But we explicitly noted that

"in the usual case findings of fact would be required even in the absence of a statutory duty in order to facilitate judicial review, insure careful administrative deliberation, assist the parties in preparing for review, and restrain agencies within the bounds of their jurisdiction."

*Id.* at 97 n.11. *See K & L Distributors, Inc. v. Murkowski*, 486 P.2d 351, 359–60 (Alaska 1971) (findings not required where basis of decision clear). Where the basis of an administrative decision is unclear, however, we have remanded for preparation of a record reflecting the agency's reasoning process. *See Moore v. State*, 553 P.2d 8, 36 (Alaska 1976).[4]

■ Appeals from zoning-related determinations should be treated in the same way. At least two of our prior cases concerning zoning appeals did include administrative findings, and thus the issue of requiring findings was not addressed. *See City & Borough of Juneau v. Thibodeau*, 595 P.2d 626, 632 n.19 (Alaska 1979); *Keiner v. City of Anchorage*, 378 P.2d 406, 411 (Alaska 1963). In others, the issues were such that, based on the record, detailed findings were not necessary for this court to understand the agency's reasoning process. *See Galt v. Stanton*, 591 P.2d 960, 962–65 (Alaska 1979); *Kelly Supply Co. v. City of Anchorage*, 516 P.2d 1206, 1208,

---

4. The author of this opinion dissented in *Moore* from the holding that the case be remanded for a record more reflective of the basis for the administrative decision. *Moore*, 553 P.2d at 22 n.23. *Moore*, however, is distinguishable on numerous grounds. The challenged decision in *Moore* was whether the leasing of certain lands for resource development was in the "best interests" of the state. In the author's view, that decision was committed to broad agency discretion, and involved the "formulation of public policy on the basis of highly technical scientific and economic information which we are poorly equipped to appraise." In the instant case, on the other hand, specific criteria for a variance exist against which the evidence can be measured. The sphere of administrative discretion in granting a variance is limited. Further, in *Moore* the governmental agency was engaged in the conduct of public proprietary business, rather than, as here, in the regulation of private interests.

1210–11 (Alaska 1973). Where the basis of the board's decision is unclear, however, a remand is necessary. *See Kenai Peninsula Borough v. Ryherd,* 628 P.2d 557 (Alaska 1981) (remanding case to planning commission for statement of reasons supporting its decision to deny the requested plat).

■ The statute governing appeals from decisions of the board of adjustment states that appeals are heard "upon the record." AS 29.33.130(d). The statute requires an aggrieved party seeking review to *specify the grounds* for the appeal. AS 29.33.130(b).[5] This requirement is also found in the governing local ordinance. KIBC 17.69.030. A board's failure to provide findings, that is, to clearly articulate the basis of its decision, precludes an applicant from making the required specification and thus can deny meaningful judicial review. *Alcorn v. Rochester Zoning Board of Adjustment,* 114 N.H. 491, 322 A.2d 608, 610 (1974). We believe that implicit in AS 29.-33.130(b) is the requirement that the agency rendering the challenged decision set forth findings to bridge the analytical gap between the raw evidence and the ultimate decision or order. Only by focusing on the relationship between evidence and findings, and between findings and ultimate action, can we determine whether the board's action is supported by substantial evidence. *See Topanga Association for a Scenic Com-*

*munity v. County of Los Angeles,* 11 Cal.3d 506, 113 Cal.Rptr. 836, 840, 522 P.2d 12, 17 (1974). Thus we hold that regardless of whether a local ordinance requires findings,[6] a board of adjustment ruling on a variance request must render findings "sufficient both to enable the parties to determine whether and on what basis they should seek review and, in the event of review, to apprise a reviewing court of the basis for the board's action." *Id.,* 113 Cal. Rptr. at 840, 522 P.2d at 16. Accordingly, the case must be remanded to the superior court with directions that it be remanded to the Kodiak board of adjustment for the purpose of providing findings of fact relevant to each condition required for a variance.

Our ruling finds support in persuasive policy considerations[7] and in other jurisdictions. *See Topanga Association for a Scenic Community,* 113 Cal.Rptr. at 840–842, 522 P.2d at 16–19; *Carlton v. Board of Zoning Appeals,* 252 Ind. 56, 245 N.E.2d 337, 343–44 (1969); *Tireman-Joy-Chicago Improvement Association v. Chernick,* 361 Mich. 211, 105 N.W.2d 57, 61 (1960); *Alcorn,* 322 A.2d at 610; *Packer v. Hornsby,* 221 Va. 117, 267 S.E.2d 140, 142 (1980); *Parkridge v. City of Seattle,* 89 Wash.2d 454, 573 P.2d 359, 365 (1978); *Harding v. Board of Zoning Appeals,* 219 S.E.2d 324, 329–31 (W.Va.1975); 3 K. Davis, Administrative Law Treatise § 14.21, at 102, § 14.22,

---

**5.** AS 29.33.130(b) states:
   "A municipal officer, a taxpayer, or a person, jointly or severally aggrieved, may appeal an action of the board to the superior court by filing with the borough clerk within the time fixed by ordinance, a notice of appeal *specifying grounds.* When the notice of appeal is filed, the board shall at once transmit to the superior court clerk copies of all papers constituting the record in the case." (emphasis added).

**6.** The Kodiak Borough ordinance governing variance requests provides that a variance may be granted *"where it is found* that all four of the specified conditions exist." KIBC 17.69.-020(B). We do not, however, rest our ruling upon this provision.

**7.** Professor Anderson explains the importance of findings:
   "Given express findings, the court can determine whether the findings are supported by substantial evidence, and whether the find-

ings warrant the decision of the board. If no findings are made, and if the court elects not to remand, its clumsy alternative is to read the record, speculate upon the portions which probably were believed by the board, guess at the conclusions drawn from credited portions, construct a basis for decision, and try to determine whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, and the latter becomes a relatively inefficient instrument for the construction of a record." (footnote omitted). 3 R. Anderson, American Law of Zoning § 20.41, at 540 (2d ed. 1977).
   Professor Davis notes that the requirement that administrative agencies provide findings supporting their decisions historically derived from the common law. 3 K. Davis, Administrative Law Treatise § 14.21, at 102–03, § 14.24 (2d ed. 1980).

§ 14.26 (2d ed. 1980); 3 R. Anderson, American Law of Zoning §§ 20.32, 20.41 (2d ed. 1977). As the court in *Topanga Association* noted, a findings requirement forces the administrative body to draw legally relevant subconclusions that are supportive of its ultimate decision. *Topanga Association*, 113 Cal.Rptr. at 842, 522 P.2d at 18. This facilitates orderly analysis on the part of the board and "minimize[s] the likelihood that the agency will randomly leap from evidence to conclusions." *Id.*

More importantly, findings enable the reviewing court to meaningfully examine [8] the agency's mode of analysis. Absent findings, a court is forced into "unguided and resource-consuming explorations," *id.* 113 Cal.Rptr. at 842, 522 P.2d at 18; groping through the record to determine "whether some combination of credible evidentiary items which supported some line of factual and legal conclusions supported the ultimate order or decision" of the board. *Id.* Finally, as previously noted, findings enable the parties to determine whether and on what basis they should seek review.[9]

On the present record, we cannot determine why the board denied the variance request. It did not set forth findings; rather, it simply voted to deny the request. It is impossible to determine whether the denial is based on appropriate factors. Absent a clearer indication of the board's reasoning supporting the denial, the superior court erred in ruling that the denial is supported by substantial evidence. The case is remanded for the purpose of directing the Kodiak board of adjustment to set forth findings relevant to the conditions required for granting a variance.

REMANDED.

MATTHEWS, J., not participating.

---

8. Judicial review of grants of variances plays an important role in protecting both the interests of the applicant and the interests of nearby property owners. As the court in *Topanga Ass'n* noted:

"A zoning scheme, after all, is similar in some respects to a contract; each party foregoes rights to use its land as it wishes in return for the assurance that the use of neighboring property will be similarly restricted, the rationale being that such mutual restriction can enhance total community welfare.... If the interest of these parties in preventing unjustified variance awards for neighboring land is not sufficiently protected, the consequence will be subversion of the critical reciprocity upon which zoning regulation rests.

Abdication by the judiciary of its responsibility to examine variance board decision-making when called upon to do so could very well lead to such subversion. Significantly, many zoning boards employ adjudicatory procedures that may be characterized as casual.... The availability of careful judicial review may help conduce these boards to insure that all parties have an opportunity fully to present their evidence and arguments. Further, ... the membership of some zoning boards may be inadequately insulated from the interests whose advocates most frequently seek variances.... Vigorous judicial review thus can serve to mitigate the effects of insufficiently independent decision-making." (citations and footnote omitted).

*Topanga Ass'n*, 113 Cal.Rptr. at 843, 522 P.2d at 19.

9. We agree with the California court that the board's findings need not be stated as formally as is required in a judicial proceeding. *Topanga Ass'n*, 113 Cal.Rptr. at 842 n.16, 522 P.2d at 18 n.16. The findings, however, must be sufficient to expose the board's mode of analysis. Thus we disapprove of setting forth findings solely in the language of the applicable legislation or ordinance.